## McCLASKEY *et al. v.* BARR *et al.*

(*Circuit Court, S. D. Ohio, W. D.* November 10, 1891.)

**1. FEDERAL AND STATE PRACTICE—LIS PENDENS—PARTITION.**
 Rev. St. Ohio, § 5055, providing that, "when the summons has been served or publication made, the action is pending, so as to charge third persons with notice of its pendency, and, while pending, no interest can be acquired by third persons in the subject-matter thereof as against plaintiff's title," is a rule of procedure, and not a rule of property, so as to be binding upon the federal courts in suits for partition brought in Ohio.

**2. LIS PENDENS—PARTITION—EFFECT OF MAKING NEW PARTIES.**
 A suit for partition is *lis pendens,* from the time of serving the subpœna, as to all the interests in the lands as they shall be determined in the final decree; and the fact that new parties come in and establish a right to part of the interest claimed by the original complainants gives no ground of complaint to third persons who purchased after service of the subpœna, and before the new parties intervened.

**3. PARTITION—NEW PARTIES DEFENDANT—ANSWERS AND CROSS-BILLS.**
 When, in a suit for partition brought by persons out of possession claiming by heirship a certain interest in the lands, other persons claiming part of such interest are made parties defendant, these latter may set up their claim by way of answer, and cross-bills are unnecessary; therefore any cross-bills filed for this purpose will be considered as answers, and the defendants in possession are not entitled to service of subpœna issued thereon.

**4. SAME—COMPENSATION FOR IMPROVEMENTS—CROSS-BILL—FOLLOWING STATE PRACTICE.**
 When, in a partition suit in a federal court, title to an interest in the lands is established by persons not in possession, and the defendants wish to claim compensation for improvements, such claim must be set up by cross-bill, although the state statutes prescribe a different practice, since the federal courts do not follow the state practice in suits in equity.

**5. SAME—DECREE—RECITING FINDINGS.**
 When, in a partition suit, persons not in possession have established title to a certain interest in the lands by proving heirship to a remote owner, the court may permit the findings as to their pedigree to be recited in the decree, when it deems such a course probably necessary to prevent further question as to the rights of the parties, notwithstanding that equity rule 86 declares that neither any part of the pleadings, "nor the report of any master, nor any prior proceedings shall be recited or stated in the decree."

**6. EQUITY PRACTICE—OBJECTIONS NOT RAISED AT HEARING—WAIVER.**
 In a partition suit, mere formal and technical objections to testimony will not be allowed as taken at the hearing, when in fact they were not then taken, but were first raised as to part thereof in a brief submitted after the hearing, and as to the remainder when the settlement of the decree was under discussion. All such objections will be considered as waived.

In Equity. Suit for partition of lands.

*Henry T. Fay, C. W. Cowen, Howard Ferris,* and *S. T. Crawford,* for complainants.

*R. A. Harrison, J. C. Harper,* and *J. L. Lincoln,* for defendants.

Before JACKSON and SAGE, JJ.

SAGE, J. This cause is now before the court on questions arising with reference to the settling of the decree, a draft by complainants' counsel having been submitted, and also a written statement and brief on behalf of the defendants in possession, suggesting their objections and certain modifications desired by them.

The first objection is to the statement in the introductory paragraph of the complainants' draft that "this cause came on to be heard at the

term of April, to-wit, the 19th day of May, A. D. 1891." This state-
ment is in accordance with the fact. The cause was heard on the 19th
of May. Counsel for the defendants asked leave to prepare and file a
brief, and leave was granted. After about 30 days they filed a printed
brief of 236 pages. The cause was taken under consideration by
the court, and an opinion prepared and filed on the 4th of August.
Counsel for the complainants then prepared a draft of decree, and
moved that it be entered. Upon the urgent objection of counsel
for the defendants in possession, the matter was deferred until such
time early in the October term as the court could give parties a
hearing. Further delay was then obtained by counsel for the defend-
ants in possession, and the presentation of the draft to the court thereby
postponed until now. Meantime the path of the complainants was im-
peded by every obstruction which the ingenuity and learning of counsel
for the defendants in possession could suggest, until there are wires in
the grass, and knots, at almost every step. It is the purpose of the court
by its decree to make the way clear, and to settle, so far as this court is
concerned, the questions already passed upon in this cause, so as to put
an end to further litigation. On the 23d of June, 1891, more than a
month after the actual hearing, Emeline E. Bird, Bailey J. Ely, and
Mary Miller et al. were made defendants, and on the 15th and 16th of
July they filed their answers and cross-bills, which have not yet been
heard nor considered. The statement of the date of the actual hearing
is therefore inserted in the decree, that it may appear affirmatively that
it occurred before these persons were made defendants.

The next objection to which we deem it necessary to refer specifically
is to the setting forth in the decree of the pedigree of the complainants
and the defendants not in possession who claim as co-tenants. It is
urged that the recital of these matters of detail is contrary to equity rule
86.[1] *Putnam* v. *Day*, 22 Wall. at page 67, however, recognizes that the
decree "may proceed to state conclusions of fact as well as of law, and
often does so for the purpose of rendering the judgment of the court more
clear and specific." The court regards this as a cause in which the de-
cree should be so framed as to prevent further question or doubt as to
the respective rights and interests of the parties, and remove, as far as it
can be done by the proceedings herein, every cloud from the title. It
therefore deems it proper that the findings be so set forth in the decree
that neither in any future proceeding herein, nor in any future litiga-
tion, shall the parties or their privies be at liberty to reopen questions
which have been heard and passed upon.

As to the correctness of the findings relating to pedigree, we do not
propose to enter into details. The opinion of the court, filed August

---

[1] Equity rule 86: "In drawing up decrees and orders, neither the bill nor answer, nor
other pleadings, nor any part thereof, nor the report of any master, nor any other prior
proceeding, shall be recited or stated in the decree or order; but the decree and order
shall begin, in substance, as follows: 'This cause came on to be heard (or to be fur-
ther heard, as the case may be) at this term, and was argued by counsel; and there-
upon, upon consideration thereof, it was ordered, adjudged, and decreed as follows,
viz.:' [Here insert the decree or order.]"

4th, sustains the claim of the complainants and of the defendants not in possession that they are heirs of the brothers and sisters of William Barr, Sr., as set forth in the pleadings and as shown by the testimony. The decree expresses specifically what is really included in the general statement of the opinion. We will, however, refer to one matter upon which an objection is based, to-wit, that tracts 21, 22, and 23 are leaseholds, and that the fee is in the heirs of Margaret S. Gunnison, who are not parties in this cause. The answer to this objection is that the unknown heirs of M. S. Gunnison were made defendants in the cause while it was pending in the superior court of Cincinnati, and before its removal to this court, and were served by publication duly made in the Cincinnati Commercial Gazette, commencing on the 19th day of January, 1887, and continuing six consecutive weekly insertions, until and including the 23d of February, 1887.

The next objection is that between the date of service of the petition filed in the superior court and the filing of the amended original bill after the removal to this court, a number of defendants to the original petition in possession of distinct parcels of land conveyed the same by deeds in fee-simple to persons who have not been made defendants to the amended original bill, or in subsequent pleadings. In the petition filed in the superior court, the plaintiffs alleged that they owned an undivided fifth part of the premises, whereas in the amended original bill the complainants allege that the four original plaintiffs owned only an undivided tenth, and that the Lobdells, who were not made parties plaintiff until the amended original bill was filed, owned an undivided tenth. It is contended, therefore, that until the amended bill was filed the suit was *lis pendens* only as to the title of Sarah E. McClaskey, Sarah King, Marcus Love, and Laura Ella Love, the four original plaintiffs. In support of this contention, section 5055, Rev. St. Ohio, which reads as follows, is cited:

"When the summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency, and, while pending, no interest can be acquired by third persons in the subject-matter thereof, as against the plaintiff's title."

The proposition that under this provision, even if it were applicable in this cause, the cause is pending only as to the interest of the plaintiffs set forth in the petition for partition, is not well founded. "As against the plaintiff's title," means, not the title claimed in the pleading, but as finally determined by the adjudication of the court. The construction claimed is too narrow. It would so limit the law of *lis pendens* in its application to a partition case as to exclude from its operation every interest in the property, excepting that claimed by the plaintiff in his petition, which could not have been the intention of the legislature. The section referred to is part of the Code of Civil Procedure in the state of Ohio, and does not apply in this court in a suit in equity, nor is it a rule of property in such sense as to make it binding here. The very essence of a suit in partition is that it shall dispose of all the interests in the entire estate, and from the date of the service of the subpœna the

cause is *lis pendens* to such extent that the purchase of any parcel of the entire tract is subject to the rights of all parties to the suit as determined by the decree of the court. "Conveyances made pending a proceeding in partition will, like all other *pendente lite* conveyances, be controlled by the decree and judgment in the partition case, as will also incumbrances made *pendente lite*." Bennet, Lis Pendens, § 155. This we conceive to be the true construction of the law of *lis pendens* in the state courts, for, in our opinion, section 5055 is not inconsistent with such a construction. The principles which govern ordinary cases involving only the plaintiff's rights to the claim originally set up are quite different from those governing partition cases, where the subject-matter of the action is the division of real estate between the rightful owners holding undivided interests, and where the court cannot make partition, or grant the relief prayed for in the bill, without bringing in all the co-tenants, ascertaining their several rights, and assigning to each his or her interest in the property. It follows necessarily that a suit for partition is notice to every subsequent purchaser that the jurisdiction of the court has been invoked to make complete partition, and that, as a matter of law, the court must determine and allot the interest, not only of the claimants, but also of any and all other persons who may be entitled; and the case becomes *lis pendens* to protect the decree of the court, whatever it may be, as against intermediate purchasers. They are bound, as matter of law, to know that the court has a right to bring in new parties, or even to hold in abeyance certain interests until the heirs can be ascertained; and that the jurisdiction is invoked, not only to determine the rights of the claimants, but also the rights of all persons interested in the subject-matter. The law of *lis pendens* affects a purchaser, as was said by Lord CRANWORTH in *Bellamy* v. *Sabine*, 1 De Gex & J. 566, 578, "not because it amounts to notice, but because the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute so as to prejudice the opposite party." It has also been held that, as the doctrine operates in cases where there is no possibility of the purchaser having notice of the pendency of the suit, it rests upon considerations of public policy, and not on presumption of notice. *Newman* v. *Chapman*, 2 Rand. (Va.) 93. It is not material that the pleadings were amended, and other claims set up, after the service of summons in the state court, and after the sales to purchasers above referred to. In *Tilton* v. *Cofield*, 93 U. S. at page 168, the supreme court say, speaking of purchasers *lite pendente*, that "they took the title subject to the contingencies of the amendments that were made, and of everything else, not *coram non judice*, the court might see fit to do in the case." The original plaintiffs in the state court, as sole descendants and heirs of Mary Grafton, claimed an undivided one-fifth part of the entire 161 4-100 acres described in their petition for partition. That was notice to the world that the heirs of Mary Grafton claimed, by virtue of their heirship, one-fifth of the entire property; and whether the plaintiffs were the only heirs, and alone entitled, or whether others not then parties, or even then known, were also in that line of heirship, is wholly immaterial, as

is also the circumstance that, although one-fifth interest was claimed, only one-sixth has been allowed.

It is further contended that the case is not ripe for decree as to those defendants in possession who have not been served with subpœna issued upon the cross-bills filed by Robert Barr *et al.*, Robert Eldridge *et al.*, and Laura O. Henley *et al.* This objection leads to the inquiry whether it was necessary that cross-bills should be filed by those parties for the purpose of setting up their interests as co-tenants with the complainants and the defendants in possession. As stated above, every co-tenant interested in the land sought to be partitioned must be made a party to the suit, and the partition must be complete; that is to say, must include all the interests of all the co-tenants. It is not, in any true sense, an adversary proceeding. Each co-tenant asks for the allotment of his portion, upon the understood condition that he allow the allotment to every other co-tenant of his portion. In this respect a suit for partition is like a bill for an account, in which, if it turn out that the balance is in favor of the defendant, the court will give him a decree therefor; and it has been held that for that reason the defendant need not file a cross-bill, but may set up his statement of the accounts in his answer. A suit for partition is also, in the respect stated, like a bill for the specific performance of a contract; in which case, if the parties differ as to the terms of the contract, and that question is decided in the defendant's favor, the court will compel complainant to perform the contract as thus established. The defendant in such case need not file a cross-bill, but may set up his version of the contract by way of answer. The cases which sustain this proposition are noted under section 156 of Langdell on Equity Pleading, and they proceed distinctly upon the theory that the court entertains such bills only upon the condition that the plaintiff will consent to the same justice being rendered to the defendant that he asks for himself. They are not distinguishable in this respect from bills in partition. When the complainant in partition obtains a decree setting off to him his share, he secures all that he is entitled to, and it need not concern him what disposition shall be made of the residue of the land among his co-tenants. That is their affair, and not his. In like manner, each of the co-tenants is interested only as to his portion. There seems to be, then, no reason why cross-bills should be filed, or why there should be any service of process, excepting that which brings the defendants into court in the first instance.

Why should the defendants in possession in this cause require that cross-bills be filed, and they served, whenever a new defendant who claims to be a tenant in common is brought into the case? All the title that these defendants in possession have, they have acquired by purchase. It has been found by the court to amount to eleven-eighteenths of the entire tract. Neither the complainants nor the other defendants have refused to recognize that title. It is true that the defendants in possession sought to retain the remaining interests, which they never purchased, and to which they never were entitled, by claiming the benefit of their construction of the statute of limitations, of the doctrines of

laches, and of the presumption of an ancient grant. But the court has found that all those claims were entirely without foundation, and that the defendants must stand alone upon their rights as purchasers. The contest as to the distribution of the remaining seven-eighteenths is exclusively between the complainants and the defendants not in possession, and yet the defendants in possession are proceeding in this cause as though every other party to the cause is to be regarded as adverse to them, and as though they may contest every movement made by these parties, whether it affects their interests or not.

A cross-bill is only necessary where the relief thereby sought cannot be afforded under bill and answer. The only prayer of the cross-bills filed in this cause is for relief, which not only might be had under the bill and answers, but which, if the facts pleaded be established, must be granted, as a necessary condition of any decree in the case, and without which the bill itself would be utterly defeated. If, therefore, cross-bills were necessary, the complainants and all the other defendants would be at the mercy of those defendants who happened to be in the position which the cross-complainants bear to their co-tenants. There is no method known whereby a defendant whose claim is not recognized by the complainants can be compelled to file a cross-bill. He may, it is true, be reduced to the alternative of doing so, or of failing to obtain the relief to which it would entitle him, but that is the utmost that can be done. If, therefore, the defendants in possession could have induced any one of the cross-complainants to decline to file a cross-bill, and the cross-bill was necessary, they could have effectually prevented the further prosecution of the suit in partition, and, so far as the jurisdiction of this court is concerned, have prolonged indefinitely their own occupation of the premises, to the exclusion of those rightly entitled to share with them as co-tenants. This cannot be according to the true course of equity pleading or practice.

The authorities are in full accord with the views above expressed. In Freem. Co-Ten., at section 499, it is laid down as the law that when the defendants have an interest in the property as co-tenants it is incumbent on them, by their answer, to disclose the nature and extent of such interest as fully as the plaintiff in his complaint is required to disclose the nature and extent of his interest. They become, as it were, plaintiffs seeking affirmative relief, and bound by all the rules of pleading to exhibit the facts upon which alone that relief can be properly extended. An "action for partition," said the supreme court of California in *Morenhout* v. *Higuera*, 32 Cal. 295, "under our statute, is *sui generis.* The parties named in the complaint, whether as plaintiffs or defendants, are all actors, each representing his own interest. Whether complainants or defendants, they are required to set forth fully and particularly the origin, nature, and extent of their respective interests in the property. This having been done, the interests of each or all may be put in issue by the others; and, if so, such issues are to be first tried and determined, and no partition can be made until the respective interests of all the parties have been ascertained and settled by a trial."

Story, Eq. Pl. § 394, is authority for the proposition that, if a bill be filed for the specific performance of an agreement, and the defandant insist upon an agreeement different from that stated in the bill, and offer to perform the agreement as set forth by him, the old requirement that he should file a cross-bill is not now necessary, because the court will under such circumstances, at his request, if his statement of the agreement be found to be the true one, decree a specific performance thereof as set up in the answer. So, also, it was held in *Jennings* v. *Webster*, 8 Paige, 503, that a cross-bill was not necessary to enable the defendant to avail himself of a set-off in a foreclosure suit; such agreement should be set up in the answer to the original bill. In *Coxe* v. *Smith*, 4 Johns. Ch. 271, Chancellor KENT, in a case for partition, said that an equitable title might be set up by the defendants by answer, and that a cross-bill was not necessary. He further said that, if that could not be done, the result would only be to let the cause stand over until the defendants, or such of them as asked for the recognition of their equitable title, could file a cross-bill. But he held that the cross-bill was not necessary.

In *German* v. *Machin*, 6 Paige, 288, 290, Chancellor WALWORTH laid down the law as follows:

"The master was wrong in supposing that a defendant,.in a partition suit in this court, could not set up in his answer, as a defense to the suit, the fact that he was in equity entitled to the whole premises of which partition was sought by the bill. The defendant must unquestionably proceed by cross-bill, if, in addition to the denial of a decree for partition and a dismissal of the bill, he seeks further and affirmative relief on his part by a decree for the transfer to him of the legal title to the whole premises, or if a discovery is necessary to establish his equitable defense;" citing Mitf. Eq. Pl. (3d Amer. Ed.) 81. See, also, *Fife* v. *Clayton*, 13 Ves. 546; *Higginson* v. *Clowes*, 15 Ves. 525.

These authorities show, not only that the defendants not in possession were not required to file cross-bills, but that the defendants in possession are the only parties in this cause who are really in default, and in no position to be pressing formal objections. As is stated in Freeman, at section 504, when compensation for improvements is sought, the pleading should be by cross-bill. Every one of the defendants in possession desires compensation for improvements. Not one of them has filed a cross-bill, or is in position to present any claim for improvements for the consideration of the court. It is true that they propose to follow the course of practice in the state courts of Ohio as laid down in the statutes relating to partition; but, while this court will recognize all rights secured by statutes of Ohio to tenants in common, it will not conform to the form and mode of securing those rights prescribed by those statutes. The right may be substantially secured by such suitable methods as the flexibility of chancery proceedings will enable the court to adopt in conformity with the practice of the federal courts. See *Brine* v. *Insurance Co.*, 96 U. S. 627, and *Insurance Co.* v. *Cushman*, 108 U. S. 61, 2 Sup. Ct. Rep. 236, where it is also said that there is no doubt of the power of the federal court to adopt its own modes and methods for the enforcement of the rights given by the local law, but that the particular mode

prescribed by the local law is not of the substance of the right. The mode or manner of ascertaining and securing the right belongs, so far as the federal court is concerned, to the domain of practice, and the power to regulate the practice in harmony with the laws of the United States and the rules of the supreme court is expressly given by statute to the circuit court. Rev. St. U. S. § 918. See, also, *Allis* v. *Insurance Co.*, 97 U. S. 144.

The defendants in possession will not be permitted to file cross-bills setting up claims to improvements, excepting upon terms which will prevent further delays, or the further setting up of mere formal objections in this cause. They will be required to consent that the cross-bills be treated as answers, as one of the conditions upon which their cross-bills will be admitted to the files. The court may so treat them without consent. Equity looks through forms to substance, and determines the character of a pleading by the averments it contains, and not by the name given it. Daniell, Ch. Pr. (5th Ed.) *355, note 2; *Cincinnati* v. *Cameron*, 33 Ohio St. 336 ; *Northman* v. *Insurance Co.*, 1 Tenn. Ch. 312; *Arnold* v. *Moyers*, 1 Lea, 308. Calling the defendants' pleadings cross-bills did not make them anything more than assertions of their rights by answer, on which, if established, relief would be granted without any cross-bill. Such other conditions will be imposed as shall seem to the court to be proper and necessary.

The draft of decree by complainants' counsel makes no findings or order respecting improvements or rents, excepting to direct the master and the appraisers to make certain findings of fact. Counsel for the defendants in possession insist that the decree shall exclude from the appraisement all improvements made between the death of Maria Bigelow, the life-tenant, August 3, 1860, and the date of the commencement of the suit by the complainants, and also by each cross-complainant, respectively, and so limit the recovery of rents that they shall begin to run from the date of service upon each defendant in possession, but that the question of excluding from the appraisement improvements prior to the death of Maria Bigelow, and subsequent to the bringing of the suit, shall be left open to them for future argument and consideration, as well as the question of the modification in their favor of the decree as to rents. They insist upon the findings above referred to, because they say they are in accordance with the opinion on file, and, on the other hand, that they shall have an opportunity to apply for a future order as to rents and as to improvements. In other words, they wish to have the decree so framed as to preclude any enlargement in favor of the complainants and the defendants not in possession, but so as to leave it open for enlargement in their favor. The court declines to grant this modest request. The court will give counsel on both sides equal opportunity to be heard with reference to improvements and to rents, and both questions will be left open to be decided after the coming in of the report of the appraisers and of the master. No argument was made at the hearing upon either question, but the court carefully considered both questions, and thus far sees no reason for modifying the rulings as they appear in the opin-

ion. These rulings were made upon a careful adjustment of the equities of the cause as they presented themselves to the mind of the court. Should counsel for the defendants in possession succeed in convincing the court that the ruling with reference to improvements ought to be more liberal in favor of the defendants in possession, it may as well be understood now that the result will probably be a radical change in the ruling as to rents, so as to make them more liberal to the complainants and to the defendants not in possession. This, it strikes us, will be necessary in order to preserve the balance of equities. By leaving these questions open, we do not intend to be understood as at all disposed to change the rulings as they appear in the opinion, but we do mean to be understood that, while we are willing to hear argument upon one side upon those questions, the argument shall be as free upon the other side.

There is also submitted, by counsel for the defendants in possession, a list of objections to the testimony which they present for allowance as made on the hearing. This list covers 18 legal-cap type-written pages. The majority of the objections are formal and technical, such as are waived if not made before the hearing. See *Doane* v. *Glenn*, 21 Wall. 33; *York Manuf'g Co.* v. *Illinois Central R. Co.*, 3 Wall. 107; *Blackburn* v. *Crawford*, 3 Wall. 175. Almost all these objections are new to the court, and were not even suggested at the hearing. But counsel claim that they were taken in their brief, which was prepared and filed after the hearing. That was too late for formal objections, which are not received in equity, unless presented while the opportunity is yet open to the party against whom they are directed to correct them, and have his testimony in due form at the hearing. But counsel are in error in stating that the objections now presented were specified in their brief. Under the head of incompetency of the testimony, there is a discussion of the law of evidence claimed to be applicable to the cause, beginning at page 55, and extending to the bottom of page 73. The only specific objections to testimony are (1) to the deposition of Maria Bigelow, which was passed upon in the opinion; (2) to the declarations of John Barr Grafton, testified to by Mrs. Henley; (3) to the declarations of Jennette Allen; (4) to the bill filed by John Lobdell, and the answer of James Grafton thereto in the case of *Grafton* v. *Grafton*; (5) to the recitals in the various deeds introduced by the complainants; (6) to the Hyde genealogy; (7) to the loose scraps of paper attached as exhibits to the deposition of Mrs. Lobdell; (8) to the exhibit from the land-office at Jackson; (9) to the receipts for legacies produced by Thomas Gibson Barr at Columbus; (10) to an affidavit made by Martha Reed before one Washington Geer, a justice of the peace; (11) to the deposition of Robert Barr, of Iowa, as a declaration; (12) to the certificate by the chancery clerk of Adams county, Miss., that he had examined the old probate records in his office, and failed to find any record of letters of administration upon the estate of Daniel Grafton, Sr., and Mary Grafton his wife, etc.; (13) to the record of the case of *Parsons and Ely* as not properly certified under section 905, Rev. St. U. S.; (14) to the record of the will of Robert Barr, because not properly certified, (both of these last ob-

jections fall within the adverse rulings in 21 Wall. and 3 Wall., cited above;) (15) to the depositions of Sarah McClaskey, Sarah King, Mrs. Lobdell, Mrs. Henley, Robert Barr, of Iowa, Samuel Barr, of Pennsylvania, and Mary Brewster, as not competent under the terms of section 5242, Rev. St. Ohio, which does not apply in this cause, the competency of these witnesses being determined by section 858 of the Revised Statutes of the United States; and (16) to two documents offered by counsel for the cross-complainants, Robert Eldridge *et al.*, to-wit, the deed of Robert Barr, of Wood county, and the receipt of Robert Barr, of Westmoreland county, for legacies. No rulings of the court were had upon any of these objections, excepting those to the deposition of Maria Bigelow, and to the documents which were produced from the custody of Thomas Gibson Barr, of Columbus. The list presented by counsel for the defendants in possession will be rejected, and the court, rejecting all formal objections, will recognize only the objections to competency specifically made in the brief; it being understood, however, that the objection to the deposition of Maria Bigelow, and to the papers produced by Thomas Gibson Barr, which were made at the hearing, will be recognized.

We have made such modifications of the draft of the decree presented by counsel for the complainants as we deem necessary, and as so modified it will be entered. All further discussion in this cause will be postponed until the coming up of the questions which have been reserved for further consideration. The circuit judge concurs in this opinion.