FARMERS' LOAN & TRUST CO. v. DENVER, L. & G. R. CO. et al.

HUTCHISON v. FARMERS' LOAN & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1903.)

Nos. 1,810, 1,815.

1. MORTGAGES—SUPERIORITY IN EQUITY—SUBSEQUENT MORTGAGE OF LEGAL TITLE TO PAY PURCHASE PRICE.

The mortgagee under the after-acquired property clause in a prior mortgage of an equitable title to land, which is subject to the condition that the mortgagor shall pay that portion of the unpaid purchase price which the purchaser of the legal title owes, before divesting him thereof, may not enforce a conveyance of the legal title, or subject to his mortgage a subsequent mortgage of that title to another for the purpose of securing the payment of a loan, a portion of the proceeds of which was applied to the payment of the unpaid part of the purchase price of the land, except upon condition that there shall be repaid to the subsequent mortgagee, out of the proceeds of the sale of the property or otherwise, the moneys which were taken from the proceeds of his loan and applied to the payment of the debt for the purchase price.

2. SAME—TAXES.

The decree for the first mortgagee must also be conditioned with the repayment to the second mortgagee of the taxes upon the property which the latter has paid during the existence of his claim.

3. SAME—FUTURE-ACQUIRED PROPERTY—INTEREST COVERED.

A mortgage of future-acquired property attaches to the interest obtained by the mortgagor only, and is inferior to junior liens, incumbrances, and equities under which the property comes to the mortgagor.

4. CROSS-BILL—REQUISITE TO AFFIRMATIVE RELIEF.

The general rule is that no affirmative relief can be granted to a defendant in equity in the absence of a cross-bill which prays for it.

5. SAME—EXCEPTION—SUCH BILL NOT REQUISITE TO COMPEL ONE WHO ASKS EQUITY TO DO EQUITY.

There is an exception to the rule.

It is that no cross-bill is necessary to enable a court of equity to grant any relief to a defendant, affirmative or otherwise, which the principle that he who asks equity must do equity requires the court to impose upon the complainant as a condition of granting to him all or a part of the relief which he seeks at its hands.

6. EQUITY—LIMITATIONS—RIGHT OF DEFENDANT TO EQUITABLE RELIEF.

A court of chancery may, in a case in which the rules and principles of equity demand it, condition its grant of relief sought by a complainant with the enforcement of a claim or equity held by a defendant, which, by reason of the statute of limitations or otherwise, the latter could not enforce in any other way.

7. SAME—LACHES.

One who has the legal title, or a paramount lien upon it, is not guilty of laches which will prevent him from asserting his equities therein in defense of a suit in chancery to deprive him of his title or lien, by the fact that he did not institute any suit or take any affirmative action to foreclose or avoid the equities of the complainant. It is time enough for him to present his equities when his legal title is assailed in a court of chancery.

(Syllabus by the Court.)

Appeals from the Circuit Court of the United States for the District of Colorado.

These are appeals from a decree of foreclosure of a trust deed, which will hereafter be called a "mortgage," made by the Denver, Lakewood & Golden

---

¶ 4. See Equity, vol. 19, Cent. Dig. § 450.

Railroad Company on November 1, 1890, to the Farmers' Loan & Trust Company, as trustee, to secure the payment of bonds to the amount of $627,000. The subject of the controversy is seven acres of land in the city of Denver, which was not owned by the railroad company when the mortgage was given, but which the trust company prayed the court to subject to the lien of its mortgage under the usual subsequently acquired property clause which was contained in that instrument. The defendant James R. Hutchison, who claimed under a trust deed upon these seven acres, dated February 1, 1894, hereafter termed the "Hutchison Mortgage," made to secure a note for $50,000 signed by the railroad company and the Jefferson Investment Company, payable to him, answered that his equity was superior to that of the trustee of the first mortgage; and the court conditioned the decree of the complainant with a sale of the seven acres separate from the other property of the railroad company covered by the first mortgage, and the payment out of the proceeds of that sale of $21,049 and interest from February 1, 1894, to the defendant Hutchison. The trust company appealed from this decree because it was conditioned with the payment of anything to Hutchison out of the proceeds of the sale of the land, and Hutchison appealed because it was not conditioned with the payment of $6,279.62 more.

Samuel Newhouse was one of the largest bondholders and stockholders of the railroad company. After that company had given and recorded its first mortgage, and about March 30, 1891, he purchased the seven acres in controversy, which will hereafter be termed the "Shop Tract," from Nathan Baker, the owner, for $52,250, paid him $5,000 in cash, and gave his notes for $47,250, which he secured by a trust deed of the land to one Wood for the benefit of Baker. Newhouse bought this land for a yard for the railroad company under an agreement with it that the title to the property should be held by him, or by a company organized to hold it and empowered to give mortgages upon it, until the railroad company paid all the moneys expended or promised to be expended for the property, and that then the railroad company should be entitled to the title. For the purpose of holding the title to the property, the Jefferson Investment Company, a corporation, was formed in June, 1891; and Newhouse conveyed the shop tract to that company, subject to the deed of trust to Wood, and that company assumed the debt secured by that deed. In the summer of 1891 the railroad company took possession of the land, erected a roundhouse and laid some tracks upon it, and continued in the occupation of the premises until a receiver was appointed in this suit, on July 31, 1896. In December, 1893, the railroad company had paid back to Newhouse the amount he had expended for the purchase of the property, and had made some payments upon his indebtedness to Baker; but there still remained due to Baker $25,849, and the company had no means to pay this or any of its other indebtedness. Baker gave notice that he would foreclose his mortgage unless the indebtedness of Newhouse to him was paid. Thereupon the railroad company and the investment company employed Newhouse to go to London to procure for them a loan of $50,000, and authorized him to offer as security for the repayment of the money a trust deed of the shop tract made by the investment company, which held the title, and certain bonds and stock as collateral security, which were of so little value that they are of no importance in this case, and will not be farther noticed. He proceeded to London, and applied to the defendant Hutchison for this loan. He informed Hutchison that he represented the railroad company and the investment company; that they were in great need of money, and would lose the title to this tract of land by the foreclosure of the Baker mortgage unless he could procure the loan; and, to secure the repayment of the loan, he agreed with Hutchison, as their agent, that he should have a first mortgage on the shop tract, and should be put in the place of Baker, who then held the superior security. Hutchison accepted this offer and agreement, and loaned the money on condition that Newhouse would see that he obtained the security. Newhouse returned to Denver; the railroad company and the investment company made a note for $50,000, payable to the order of Hutchison; the investment company made a trust deed to Newhouse of the shop tract to secure the note; the Baker mortgage was released; and Hutchison paid over the $50,000. This payment was made on February 2, 1894. On

that day there was due upon the mortgage to Baker $25,849. $21,049 of the money received from Hutchison was on that day paid to the First National Bank in part payment of the notes held by Baker, and $4,800 of his money was paid to six directors of the railroad company for certain bonds which Baker had agreed to accept, and did accept on that day, in payment of the balance owing upon the mortgage to him. The indebtedness secured by the Hutchison mortgage was not paid. Hutchison caused it to be foreclosed, and on October 19, 1897, at the trustee's sale, he bid it in for $40,000, and received a trustee's deed of the premises in question under it. The various mortgages and instruments affecting title to which reference has been made were recorded at about the times they were respectively made.

On July 29, 1896, the Farmers' Loan & Trust Company exhibited its bill in the court below to foreclose the mortgage of November 1, 1890; but it made no one party defendant but the railroad company, and did not ask for any special relief in reference to the tract of land here in question. On November 30, 1898, it filed an amendment and addition to its bill, in which it recited the transactions relative to this tract of land; prayed that the Jefferson Company, Newhouse, the trustee, and Hutchison be made parties defendant, and that its mortgage of November 1, 1890, be declared to constitute a lien upon the shop tract superior to any right, title, or lien of these proposed defendants therein or thereon. The Jefferson Company and New-house appeared as defendants, but made no serious contest, and decrees pro confesso were taken against them. After Hutchison had demurred to the amended bill, and after his demurrer had been overruled, he answered on February 15, 1901, and by an amendment filed July 22, 1901, that he made the loan of the $50,000 to take up and pay the purchase-money notes of New-house to Baker, and to prevent the impending foreclosure of the mortgage to the latter under an agreement with the Jefferson Company and the railroad company that he should have a first mortgage upon the shop tract, that $25,849 of the money which the railroad company obtained from him by this loan was used to pay the notes to Baker, and that the trust deed to Wood was released for the purpose of executing this agreement. He also set forth the fact that he had paid the taxes levied upon this property for many years, which amounted in the aggregate to about $1,500. Upon this state of facts, the court below rendered the decree which is challenged by the appeals which are now to be considered.

Charles W. Waterman and Thomas J. Leftwich (Edward O. Wolcott, Joel F. Vaile, Herbert B. Turner, Louis B. Rolston, and James F. Horan, on the brief), for Farmers' Loan & Trust Co.

C. C. Parsons and Stuart D. Walling, for James R. Hutchison.

Before SANBORN and VAN DEVANTER, Circuit Judges, and HOOK, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

On February 2, 1894, the Jefferson Investment Company held the legal title to the land here in controversy in trust (1) to pay $25,849, the unpaid part of its purchase price then evidenced by the notes and mortgage to Baker, and all moneys expended for the property; and (2) upon the repayment of these amounts by the railroad company to convey the property to that corporation.

The Farmers' Loan & Trust Company, under the after-acquired property clause of its deed of trust of 1890, had a lien upon the equitable title of the railroad company. It had a lien upon the right of the railroad company to pay the $25,849 owing for the land, and any other moneys expended for it, and to acquire the property by means of that payment, but it had nothing more. In reliance upon

the trust deed of the investment company, the corporation which held the legal title, and upon the representation of that company and of the railroad company by their agent, Newhouse, who negotiated and procured the loan from him, that these corporations needed his moneys to save the property from the foreclosure of the mortgage to Baker, Hutchison loaned them $50,000. At least $21,049 of the money obtained by this loan was used to pay the notes of Baker, and to procure a release of his mortgage for the purchase price. The Farmers' Loan & Trust Company brought Hutchison into the court below, and besought that court to adjudge that the bondholders whom it represents have the paramount lien upon this land, that this tract shall be sold under the direction of the court, and that all its proceeds shall be applied to the payment of the bonds secured by the mortgage of 1890, so that neither Hutchison, whose money paid the unpaid portion of the purchase price owing to Baker, nor the investment company, which obligated itself to repay it to him, shall have any security or derive any benefit from the land which the money of the one and the obligation and mortgage of the other saved from the foreclosure of the mortgage to Baker. The circuit court granted the prayer of the trust company that the land should be sold, but it conditioned this grant of relief with a provision that out of the proceeds of the sale Hutchison should first be paid the $21,049 which had been paid upon the debt for the purchase price out of the moneys which he loaned to the investment company and the railroad company.

This decree does not impress one at first blush as either unjust or inequitable. Neither the Farmers' Loan & Trust Company nor the bondholders paid any consideration for, or loaned any money upon the faith of, the tract of land here in question. This land was acquired by Newhouse and the investment company after all the bonds had been issued except those which were subsequently taken by Newhouse when he had complete knowledge of all the legal and equitable rights of the parties. The mortgage to Baker to secure the payment of a part of the purchase price was superior, in law and in equity, to the mortgage to the trust company. The latter attached to nothing but the equitable estate of the railroad company, and it was a condition precedent to the acquisition of the title by that company that it should pay the moneys expended for the property and the unpaid part of the purchase price. A mortgage of future-acquired property attaches to the interest obtained by the mortgagor only, and is inferior to junior liens, incumbrances, or equities under which the property comes to the mortgagor. U. S. v. New Orleans & Ohio Railroad, 12 Wall. 362, 20 L. Ed. 434; Central Trust Co. v. Kneeland, 138 U. S. 414, 423, 11 Sup. Ct. 357, 34 L. Ed. 1014. Why may not Hutchison, who holds the first mortgage upon the legal title, insist that the moneys taken from the proceeds of his loan, and applied to the payment of a part of the purchase price of the property, shall be repaid to him before his mortgage is subjected to the after-acquired property clause of the prior mortgage to the complainant? Counsel for the trust company urge many reasons why, in their opinion, the court could not lawfully impose such a condition, and why, in their judgment, the decree below is erroneous.

They say that this condition could not be imposed, and that the decree ought to be reversed, because Hutchison filed no cross-bill and prayed for no affirmative relief, while the decree directs that $21,049 and interest shall be paid to him out of the proceeds of the sale of the land. It is true that the general rule is that a cross-bill is indispensable to the grant of affirmative relief to a defendant in equity. But there is an exception to this rule, as well settled and uniformly applied as the rule itself. It is that no cross-bill is requisite to the application of the maxim that he who asks equity must do equity. It is that any relief, affirmative or otherwise, may be granted to a defendant which the principle embodied in this maxim requires the court to impose upon the complainant as a condition of granting all or a part of the relief he seeks, regardless of the pleadings which present it. Morgan v. Schermerhorn, 1 Paige, 544, 546, 19 Am. Dec. 449; Ruddell v. Ambler, 18 Ark. 369, 379; McClaskey v. Barr (C. C.) 48 Fed. 130, 134; De Walsh v. Braman, 160 Ill. 415, 43 N. E. 597; Hudnit v. Nash, 16 N. J. Eq. 550, 553, 555; Crocker v. Lowenthal, 83 Ill. 579, 584; Walker v. Abt, 83 Ill. 226, 230. In Morgan v. Schermerhorn, 1 Paige, 544, 546, 19 Am. Dec. 449, the chancellor said that, where one comes to a court of equity to seek relief against a usurious contract, he must pay or offer to pay the amount actually due, before he will be entitled to an answer as to the alleged usury, and added, "If a party comes here to seek equity, the court will compel him to do equity." In Hudnit v. Nash, 16 N. J. Eq. 550, 553, 555 the second mortgagee exhibited a bill against Nash, the owner of the first mortgage, the third mortgagee, and the owners of the equity of redemption, in which he alleged that the first mortgage was usurious and void. Nash answered that he held the paramount lien, but he filed no cross-bill. The court said, "But if a party comes into equity and asks relief, the court will compel him to do equity, although the defendant has not demurred to the bill;" that the complainant's decree must be upon terms of paying Nash's mortgage; that no decree could be made except such as could be granted on the prayer of the complainants' bill; and it entered a decree of sale of the premises, and of application of the proceds, first, to the payment of Nash's mortgage; second, to the payment of the mortgage to the complainant; and, third, to the payment of the third mortgage. This decree was affirmed in the appellate court. No cross-bills are required, to enable the defendants to secure decrees establishing their rights in suits for accounting, partition, and specific performance. McClaskey v. Barr (C. C.) 48 Fed. 134; Coxe v. Smith, 4 Johns. Ch. 271, 278; Story's Eq. Pl. § 394; Jennings v. Webster, 8 Paige, 503, 35 Am. Dec. 722. In De Walsh v. Braman, 160 Ill. 415, 43 N. E. 597, Braman exhibited a bill in equity to compel De Walsh and his trustee to convey to him the title to two city lots. De Walsh answered that he had expended $1,118.77 in making improvements upon the property, which had not been repaid to him, but he filed no cross-bill. Nevertheless the Supreme Court of Illinois conditioned the decree for a conveyance of the title to the complainant, with the payment to the defendant of the $1,118.77 and interest. The case in hand falls under the exception to the general rule which these authorities illustrate. Hutchison is not

the actor here.  He brought no suit, and he has asked no relief, save that he be hence dismissed, and that he have such other relief as may be just and equitable.  He was called into the court below by the trust company, which besought that court to decree a sale of the shop tract, which was covered by his mortgage, and to apply the proceeds of that sale to the payment of the debt secured by the mortgage to the complainant.  The decree below is founded upon this prayer of the trust company, not upon any claim or prayer of the defendant Hutchison.  It directs the sale which the trust company sought, but conditions it with the payment out of the proceeds of the superior equitable lien of the defendant.  It grants no relief to the defendant which the rules of equity jurisprudence did not, in the opinion of the circuit court, require it to impose as a condition of granting any part of the relief which the trust company asked with reference to the lien here in controversy.  No cross-bill was requisite to warrant the action of the court below.

The next contention of counsel for the complainant is that the decree was wrong because the claim of Hutchison was barred by the statute of limitations of Colorado and by laches, so that it could not lawfully be enforced in a court of equity.  They say that the equity of the defendant, if it exists at all, is nothing but his right to be subrogated to the rights of Baker; that this right arose on February 2, 1894, when his money paid Baker's claim; that a suit was necessary to enforce this right and work the subrogation; and that such a suit was barred by the statute of limitations of Colorado before Hutchison pleaded the facts which disclose his right of subrogation.  But in our view of this case, it is not necessary to consider or determine whether or not such a suit was barred by the statute, or to express any opinion upon that question.  Even if such a bar had arisen, it did not prohibit a court of chancery from requiring a complainant who sought its aid to recognize and pay an equitable demand of a defendant, which the latter could not affirmatively enforce as a condition of granting the relief sought by the complainant if the established rules of equity jurisprudence imposed upon it the duty to do so.  A court of chancery may, in a case in which the rules and principles of equity demand it, condition the grant of relief sought from it by a complainant with the enforcement of a claim or an equity held by a defendant, which, by reason of the statute of limitations or otherwise, the latter could not enforce in any other way.  Pomeroy's Eq. Jur. §§ 386, 393, note 4; Brent v. Bank of Washington, 10 Pet. 596, 9 L. Ed. 547; De Walsh v. Braman, 160 Ill. 415, 43 N. E. 597, 600; Farmers' Bank v. Iglehart, 6 Gill, 50, 57; Fievel v. Zuber, 67 Tex. 279, 280, 3 S. W. 273; Booth v. Hoskins, 75 Cal. 271, 275, 276, 17 Pac. 225; De Cazara v. Orena, 80 Cal. 132, 134, 22 Pac. 74; Hall v. Arnott, 80 Cal. 348, 354, 22 Pac. 200; Grant v. Burr, 54 Cal. 298, 301; McKeen v. James (Tex. Civ. App.) 23 S. W. 460, 464; Rodriguez v. Haynes, 76 Tex. 225, 232, 13 S. W. 296; Hartranft's Estate, 153 Pa. 530, 533, 26 Atl. 104, 34 Am. St. Rep. 717; 19 Am. & Eng. Enc. of Law (2d Ed.) pp. 177, 178; Dimick v. Grand Island Banking Co., 37 Neb. 394, 399, 55 N. W. 1066; Gage v. Riverside Trust Co. (C. C.) 86 Fed. 984, 998;

Whitmore v. Savings Union, 50 Cal. 145, 150; Spect v. Spect, 88 Cal. 437, 444, 26 Pac. 203, 13 L. R. A. 137, 22 Am. St. Rep. 314.

In Brent v. Bank of Washington, 10 Pet. 596, 9 L. Ed. 547, Robert Brent died on September 7, 1819, the owner of 650 shares of stock of the bank. He was an indorser on promissory notes held by it for $667, $400, and for other amounts, which aggregated $2,067, and the charter of the bank provided that its stock was transferable only on the books of the bank by the holder of the stock. When Brent died he was deeply indebted to the United States. In 1820 his executors applied to the bank to transfer the stock which Brent had held, and the bank refused to make the transfer unless the notes which Brent had indorsed were paid. In the meantime the bank had sued the executors upon the two notes for $400 and $667, respectively, and upon a plea of the statute of limitations a verdict and judgment had been rendered against it. In 1827 the surviving executor brought a bill' in equity, for the use of the United States, still a large creditor of the estate of Brent, to compel the bank to transfer the stock to pay the debt due to the government, and alleged the prior lien of the United States. The bank filed a bill in which it asserted a lien upon the stock to pay its debt, and the court decreed a sale of the property, and the application of the proceeds, first, to the payment of the debt to the bank; and, second, to the payment of the debt to the United States. On appeal, counsel for the United States insisted that all right of the bank was barred by the statute of limitations, and by the verdict and judgment against it upon the plea of that statute. But the Supreme Court said, "In Bank of United States v. Donnally, 8 Pet. 361 [8 L. Ed. 974], this court laid it down as an established principle that the act of limitations operated only to bar the remedy, not to extinguish the right or cause of action," and it affirmed the decree. In De Walsh v. Braman, 160 Ill. 415, 43 N. E. 597, 598, the claim of the defendant for the $1,118.77, which he had expended in making improvements upon the property, was barred by the statute of limitations, the land was in the possession of the complainant, and he presented a declaration of trust signed by the defendant to the effect that he held the land for the complainant, so that there was no way in which the defendant could have enforced his equity by an action or proceeding at law or in chancery; and yet, when the complainant asked a court of equity to compel the defendant to convey the title, the Supreme Court of Illinois conditioned that relief with the requirement that the complainant should do equity by paying back to the defendant the money which he had advanced to improve the property, with interest upon it. In Booth v. Hoskins, 75 Cal. 271, 276, 17 Pac. 225, Booth brought a suit to quiet title, and to set aside a deed to Hoskins which had been given to secure the payment of money advanced by him to the complainant. The claim to recover this money and the suit to foreclose the mortgage evidenced by the debt were both barred by the statute of limitations of California. Nevertheless the court required the plaintiff to do equity. It required him to pay the outlawed debt as a condition of granting him the equitable relief he sought. Our conclusion is that the statute of limitations constituted no bar to the right of the court to condition the relief which the trust company asked with the

payment of the money which Hutchison had advanced to pay a part of the purchase price of this land. For the same reasons which make the statute of limitations ineffective here, the laches of the defendant constitutes no bar to the action of the court below.

Moreover, the defendant is not fairly chargeable with laches in any degree, because he had a first mortgage upon the legal title to this land, and it was only by an appeal to equity that either the railroad company or the trust company could deprive him of his paramount lien. He was content. He needed no relief from a court of equity, and he sought none. Non constat that the railroad company or the trust company would ever endeavor to enforce their equities. He might well await their action, secure in the basic principles of equity jurisprudence that no court of chancery would ever direct him to recognize or respect the equities of the trust company or of the railroad company without at the same time requiring them to admit and respect his equity, and to pay back to him the money which he had advanced on the faith of the mortgage, and without which neither the railroad company nor the trust company could have acquired the title to the property. One who holds the legal title, or the paramount lien upon the legal title, to real estate, is not guilty of laches which will prevent him from asserting his equities therein in defense of a suit in chancery to compel him to surrender his title or lien, by the fact that he did not institute any suit or commence any action to avoid or foreclose the equities of the complainant. It is time enough for him to present his equities to a court of chancery when his legal title is there assailed.

In the arguments and briefs of counsel much time and labor have been devoted to the consideration and discussion of the question whether or not Hutchison was entitled to be subrogated to the rights of Baker. If this land had been conveyed to the railroad company when the notes to Baker were paid, and if the deed of trust to secure Hutchison had been made by that corporation, instead of by the investment company, this question might have been interesting and important. But in view of the fact that the legal title never passed to the railroad company, but remained in the investment company, charged with and conditioned by the original trust to convey it to the railroad company only on condition that the latter paid the purchase price and all moneys expended for the property, this question of subrogation is not determinative of the rights of these parties, and a discussion and decision of it would be only a work of supererogation. The right of Hutchison to the repayment of that part of his money which paid the debt for a portion of the purchase price of this land rests on higher ground than his right to be subrogated to the rights of Baker. It rests on the fact that he has the first mortgage of the legal title to the land, while the lien of the trust company, as we have already seen, covers only the equitable right of the railroad company to obtain this title on condition that it first pays the moneys expended for the property, including the purchase price. When Hutchison took his mortgage, the only interest of the railroad company in the land was its equitable right to obtain the title to it by paying the part of the purchase price evidenced by the unpaid notes to

Baker, and any other moneys which had been expended in securing or preserving it.

Counsel for the trust company persuasively argue that the railroad company fulfilled this condition and paid this part of the purchase price when the notes to Baker were satisfied with the money which was obtained from Hutchison upon the mortgage made by the investment company, and upon the joint note of that company and the railroad company. But this contention is not tenable. There is no doubt that the purchase price and the notes to Baker were paid. But the condition precedent to the right of the railroad company to divest the investment company and its assign of the legal title was not that the notes or the price should be paid, merely. It was that they should be paid by the railroad company or by its assigns. Payment by Newhouse, by the investment company, by the assign of the investment company, was no compliance with this condition. But neither the railroad company nor the trust company ever paid the debt for that part of the purchase price which was evidenced by the notes to Baker on February 2, 1894. The checks which paid that debt were not those of the railroad company. They were the checks of Newhouse upon the money of Hutchison. It was the title, the note, and the mortgage of the investment company, and the money of Hutchison advanced in reliance upon these securities, which made these checks effective. Nor was it the signature of the railroad company upon this note to Hutchison that induced him to make this loan. He knew that that corporation was unable to pay any of its obligations. He loaned his money in reliance upon the note and mortgage of the investment company. Now, since the condition precedent to the right of the railroad company to the title to this land was the payment by it of the purchase price of the property, and since the title to it was in the investment company for the express purpose of enforcing this condition, and preventing the lien of the trust company's mortgage from attaching to the property until this condition was fulfilled, neither the railroad company nor the trust company could become entitled to take this title, or to subject it to the latter's mortgage, as against either the investment company or its assigns, until there had been an actual, substantial compliance with that condition upon their part. The investment company had the right to pay the notes to·Baker which it had assumed with its own money, or with money which it borrowed from others; and, if it had done so, it would have had the right to retain its title to the property until the railroad company or its assign, the trust company, reimbursed it for the money it advanced for that purpose, or until they paid any obligation which it incurred to raise the money to make the payment. The investment company had the undoubted right to assign or mortgage the title which it held for the purpose of raising the money to make this payment, and the assignee or the mortgagee who advanced his money on the faith of such a deed or mortgage for the purpose of paying any part of the purchase price necessarily acquired the same right which the investment company would have had if it had paid the same part of the price to hold the title to or the lien upon the land, as against the railroad company and the trust company, until he was reimbursed

the money which he had expended to pay a part of the purchase price of the property. The investment company assigned its title by the trust deed to Newhouse to raise the money to pay the purchase price which it had agreed to pay, and for that assignment Hutchison advanced the money which paid the debt to Baker. It is not material that this money passed through the hands of Newhouse and Loveland, the treasurer of the railroad company, to Baker, or to the bank which held his notes. The fact remained that it was the money of Hutchison, raised on the mortgage and note of the investment company, that paid the debt for the purchase price.

The argument of counsel that the debt and mortgage of Hutchison have been paid, because at his trustee's sale he bid the land in for $40,000, and secured the trustee's deed of it, and because he has bid in some collateral of doubtful value which he held for amounts which aggregated about the amount of the remainder of his debt, is not worthy of serious consideration. If the foreclosure of the trust deed to Newhouse was effective, the trustee's deed to Hutchison added all the rights of the mortgagor, the investment company, to his rights as mortgagee. If it was not effective, it left his rights as mortgagee unimpaired. He did not at the instant he bid in the property lose all his equities in it, and pay his debt by his loss of them, without receiving anything of value for his action. His equity was ample to sustain the condition in his favor which the court below inserted in the decree before the trustee's sale to him, and, whether that was void or valid, his position was no weaker after it was completed.

Nor is it material, as counsel contend, that Hutchison did not make a loan of the exact amount which was used to pay the debt for the purchase price, but made a general loan of $50,000 for the purpose of paying debts of the railroad company, as well as the debt of Newhouse and the investment company to Baker. The trust deed to Newhouse conveyed the title of the investment company to the former to secure payment of $50,000 to Hutchison. If the title of the investment company had been free and perfect, all the property thus conveyed might be lawfully applied to the payment of the entire $50,000. But the deed to Newhouse conveyed only the title which the investment company had, and that was a title defeasible upon the payment by the railroad company or its assigns of the amount which the investment company or its assigns furnished and paid in satisfaction of the debt to Baker for the purchase price of the property. Upon the payment of that amount to Hutchison by the railroad company or the trust company, they are entitled to the benefit of the property, and until that payment is made they have no right to draw the legal title pledged to Hutchison to the support of their equity.

The difficulty of the complainant is not more the strength of Hutchison's equity than it is the weakness of its own. It has the equitable title of the railroad company. A condition precedent to the enforcement of that title is the payment to the holder of the legal title of the amount which he has advanced on the faith of it, to pay, and which has been used to pay, the purchase price of the land. The trust company asks the enforcement of that equity. It must fulfill the condition precedent before its prayer can be granted. The court below might

well have adjudged that the relief it sought should be granted on condition that it repaid to Hutchison, by an early day certain, the amount of the money he loaned which was used to pay the purchase price to Baker, and that, if it failed to do so, its bill, as against the investment company, Newhouse, and Hutchison, should be dismissed. It granted a decree more favorable to the complainant. It directed the sale of the land, and the application of the proceeds, first, to the payment of that amount and interest; and, second, to the payment of the debt secured by the general mortgage. There was no error in this decree of which the trust company can successfully complain. It gives effect to the purpose and intention with which the railroad company and the parties who bought and have held the title to the land placed and kept the legal title to it in Newhouse and the investment company, rather than in the railroad company—the purpose to keep and use it as security for the moneys used to purchase it free from the general mortgage to the complainant until the railroad company. or the trust company should repay the moneys expended to secure and preserve it.

The decree is just and equitable. The bondholders whom the complainant represents did not loan their money in reliance upon this property, because it had not then been acquired. They have paid nothing to obtain it. They ask that the payment of the part of the purchase price by the money which Hutchison loaned on the security of the legal title to this land be made to inure to their benefit. If they are not required to repay this money to him, he loses all that he has thus expended, and they gain not only that amount, but the entire value of the land. In equity and good conscience, and by the express terms of the trust under which the investment company and its assign, the trustee, Newhouse, took and held the title to this property, the power was vested in, and the duty was imposed upon, the court below to condition its grant of the relief sought by the complainant with the repayment to Hutchison of the amount of the purchase price which had been paid out of the money which he loaned upon the security of that title.

The mortgagee under the after-acquired property clause in a prior mortgage of an equitable title to land, which is subject to the condition that the mortgagor shall pay that portion of the unpaid purchase price which the holder of the legal title owes, before divesting him thereof, may not enforce a conveyance of the legal title, or subject to his mortgage a subsequent mortgage of that title to another to secure the payment of a loan, a part of the proceeds of which was applied to the payment of the unpaid part of the purchase price, except upon the condition that the moneys so applied shall be repaid to the subsequent mortgagee out of the proceeds of the sale or otherwise.

We turn to the appeal of Hutchison. He insists that his money paid $4,800 more of the debt to Baker than the $21,049 allowed to him in the decree. The facts are that the debt to Baker for the purchase price was $25,849; that $21,049 of it was paid directly to the First National Bank, which held the notes of Baker, by means of the check of Newhouse upon the money loaned by Hutchison; and

that the remaining $4,800 was paid to Baker in this way: New-house drew a check of $4,800, payable to W. A. Loveland, trustee, which was paid out of the money loaned by Hutchison. Certain directors of the railroad company induced Baker to accept six bonds of that company, of $1,000 each, at the price of 80 cents on the dollar, in payment of this remaining balance of $4,800; and Loveland distributed the $4,800 which he secured upon the check of Newhouse among the directors who furnished the bonds for this purpose. Courts of equity look through forms and devices to the fact and the reality. This transaction was, in truth and in effect, a payment of the $4,800 with the money of Hutchison. If Newhouse had paid this money to Baker, and he had bought the bonds with it, or if New-house had bought the bonds with the $4,800, and paid the balance to Baker with the bonds, the payment of this balance of Baker's debt with Hutchison's money might have been more patent, but it would not have been more real, more actual. It was the trustee of Hutchison who bought the bonds. It was his money which caused them to be delivered to Baker in payment of his debt. If his money had not been furnished, or if it had not been paid to the directors for the bonds, the latter would not have been delivered to Baker, and the $4,800 would not have been paid. The money loaned by Hutchison which was drawn on the check of Newhouse for $4,800 was as really used to pay the debt of Baker as was the check for $21,049, which went directly to the holder of the notes, and Hutchison is as much entitled to the repayment with interest out of the proceeds of the sale of this tract of land of the one as of the other. During the existence of his mortgage upon this property, Hutchison has paid taxes which were levied upon it to the amount of $1,479.62. During this time the investment company, or its assign, Newhouse, the trustee, held the legal title to this property in trust, first, to repay to Hutchison the amount he expended to acquire and preserve it; second, to pay the debt evidenced by the mortgage to the trust company; and, third, to convey to the railroad company. Under familiar principles, these trustees, before they could be required to part with their title, were entitled to reimbursement for all moneys which they necessarily expended in paying taxes, assessments, and other lawful charges upon the land, which, if left unpaid, might divest all parties in interest of their titles and liens, whether legal or equitable. No reason occurs to us why the same rule should not operate in favor of Hutchison, the mortgagee of the legal title. His payment of the taxes, like his payment of the unpaid purchase price, inures to the benefit of the complainant under the decree. These taxes were a lien which the complainant would have been compelled to discharge, in order to secure or retain any interest in the property, if Hutchison himself had not paid them. It is just and equitable to require the repayment of this money and interest out of the proceeds of the property, as a condition of its sale; and that course of proceeding is warranted by the terms of the trust under which the legal title is held, which are that the railroad company is to pay all moneys expended for the property before it should receive the title. Taxes were as much and as necessarily expended for the property, within the fair meaning of this condition, as

was the purchase price; and they ought to be repaid, with interest, before the property is turned over to the cestuis que trustent.

The conclusion of the whole matter is that the decree below must be reversed, with costs in favor of the defendant Hutchison, in both appeals, and this case must be remanded to the court below, with directions to enter a decree for the separate sale of the shop tract, for the application of the proceeds of its sale in the first instance to the repayment to Hutchison of the $25,849 paid to extinguish the unpaid debt to Baker for the purchase price out of the moneys he loaned, and to the repayment of the $1,479.62 which he paid on account of taxes upon the tract in question, together with the interest upon these amounts from the times they were respectively paid, and for the other relief granted in the decree challenged by these appeals which was not questioned thereby; and it is so ordered.