Edward F. DeWalsh *et al.*

*v.*

Elias Braman.

*Filed at Ottawa March 28, 1896.*

1. LIMITATIONS—*when equity will allow trustee's claim for improvements, though barred.* The fact that the right of one holding lands in trust for another to recover for improvements placed by him thereon is barred by limitation at law or in equity, will not prevent the court from imposing as a condition of a decree requiring him to convey to the beneficiary, that the latter repay such amount.

2. TRUSTS—*effect of trustee's declarations on his right to cost of improvements.* The written and recorded declaration of one holding property in trust for another that he has no pecuniary interest therein, will not prevent his recovery of the amount paid for improvements subsequently placed by him upon the premises at the request of the owner.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

A bill in chancery was filed by appellee, Elias Braman, the complainant in the court below, alleging that he was the equitable owner of lots 14 and 15, west of Ranson street, in Ranson's subdivision of that part of block 2 west of the Chicago and Rock Island railroad, in canal trustees' subdivision of section 33, township 39, north, range 14, east of the third principal meridian, in Cook county. The bill alleges that the legal title to said lots was held by appellant, Edward F. DeWalsh, one of the defendants below, in trust for complainant, and seeks to establish the title in complainant and to compel a conveyance from DeWalsh of the legal title to himself. The answer admits the allegations of the bill, and alleges the expenditure of money by DeWalsh in the improvement of the lots with a dwelling house for complainant and at his request, and offers to make a conveyance on repayment of the money expended by him.

It appears from the record that Braman, in 1884, was living on Thirty-third street, in Chicago, in a house which was in bad repair, and he determined to sell the place, buy new lots and fit up a new home. He applied to De-Walsh, who was a carpenter, regarding his purchase, and requested that the title to the property might be taken in the name of DeWalsh. For a number of years the two parties had been fast friends, both being employed about the buildings belonging to the McCormick estate in the city of Chicago. DeWalsh at first declined to permit the title of the property to be taken in himself, but finally consented. The purchase was made and a deed executed conveying the two lots in question to appellant, Edward F. DeWalsh. It is conceded that no part of the purchase money of these lots was paid by DeWalsh. In April, 1884, about a month after the delivery of the deed, De-Walsh executed a trust deed of the two lots, securing four notes signed by Braman, for $250 each, for part of the purchase money of the lots, which instrument was executed at the request and direction of Braman. On May 24, 1884, the following instrument in writing was executed by DeWalsh:

"*To whom it may concern*—This is to certify, that I, Edward F. DeWalsh, of Chicago, Cook county, Illinois,.hold the title to lots fourteen (14) and fifteen (15), west of Ranson street, in Ranson's subdivision of that part of block 2 west of railroad, in canal trustees' subdivision of section thirty-three (33), township 39, north, range 14, east of·third principal meridian, in Cook county, in trust for the sole benefit and behoof of Elias Braman and his legal representatives, and that I have no pecuniary interest therein.      Edward F. DeWalsh.   [seal.]

"Chicago, Ill., *May 24, 1834.*

"Witness: Fred M. Snow."

This instrument was filed for record on the 26th of October, 1891. DeWalsh admits the signature of the

paper as being genuine, but denies that he ever signed it
knowing its effect, but insists that at the time the instru-
ment was signed he believed he was signing an order for
Braman to receive the money on the four notes men-
tioned in the trust deed above.   In June of the same year
Braman purchased a two-story frame building for the
purpose of having it moved upon the two lots in ques-
tion.   DeWalsh strengthened the building, and furnished
the labor, material and lumber necessary to transfer the
same.   When the building was placed upon the lots, De-
Walsh, at Braman's request, proceeded to remodel it, fur-
nishing carpenters, hardware, roofing, plastering, mason
work, lumber and mill work, all amounting to about
$1100.   The remodeling of the building was completed in
the fall of that year.   Some small items of repairs were
made later, and in 1888 DeWalsh built a sidewalk in front
of the premises, making the total amount expended by
him in the improvement of this property $1158.77.   In the
spring of 1888 Braman paid DeWalsh $40, leaving a bal-
ance due at that time of $1118.77, as appears from the
evidence.   There is but slight question raised by appel-
lee as to the expenditure of this money by DeWalsh,
except as to a bill for mill work bought of J. K. Russell
& Co., amounting to $203, of which Braman had the re-
ceipted bill in his possession claiming to have paid it,
but the great weight of the evidence is to the effect that
this bill, like others in the same transaction, was paid
by DeWalsh.   Braman went into possession of the prem-
ises on its completion, in 1884, and has continued therein
since that time and has paid all taxes and assessments,
and has also paid the four notes, of $250 each, secured
by DeWalsh's trust deed.   It was contended by Braman
that it was never expected or intended that he should
repay DeWalsh for his labor or for money expended in
the improvement of these premises, but that it was done
in return for favors rendered him by Braman in procuring
contracts for work in the refitting of door and window

frames in the Reaper block, of which Braman had charge
or control.   It appears, however, that the work which
Braman was able to control for DeWalsh was very insig-
nificant in amount.

The cause was referred to the master in chancery of
the circuit court of Cook county to take proof and report
the same, together with his opinion of the law and the
evidence.   The master in chancery, in his report, found
the facts in substance as herein stated, and that Braman
had employed DeWalsh to improve and make the altera-
tions in the building, in which connection DeWalsh had
expended $1118.77, for which he had frequently applied
to Braman for a settlement or adjustment, but that Bra-
man had avoided any adjustment by assuring him that,
the title of the property being in DeWalsh, he was per-
fectly secure for the money he had advanced.   The mas-
ter further found that Braman was the equitable owner
of the property and entitled to the conveyance of the
legal title, and that it was against all honesty, equity
and good conscience that DeWalsh should be required to
make such conveyance until Braman had paid the amount
expended by DeWalsh in the improvement of the prop-
erty; that all the material allegations of the answer were
proven, and that the defendant, DeWalsh, is the more
credible man of the two, since his testimony was cor-
roborated by other witnesses and Braman's testimony
was uncorroborated, and Braman's manner upon the wit-
ness stand was not such as to inspire confidence in him.
The master further found that the indebtedness due from
Braman to DeWalsh had not been barred by the Stat-
ute of Limitations in view of the repeated promises of
Braman to pay the same, and that he was of the opinion
that upon the general principles of equity, and in keep-
ing with all principles of honesty and good conscience,
complainant should not be granted the relief prayed for
by him until he had done equity to the defendant, and
that if the conveyance should be ordered it should be

conditioned upon the payment to DeWalsh of the amount expended by him in the improvements above noted.

Exceptions were filed to all the findings of the master, and upon a hearing all such exceptions were sustained by the court and a decree rendered finding the equities with the complainant, and adjudging that DeWalsh and wife should execute a deed conveying all interest in said premises to the complainant, and that in default thereof within the specified time a special commissioner should make said deed on behalf of the defendant. The decree denied the relief asked for by the defendant in his answer. From such decree this appeal is prosecuted to this court.

MATTHEWS & HUGHES, for appellants.

WILLIAM E. MASON, and CLARK J. TISDEL, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The questions involved in this record present a series of facts in the main undisputed, and which, it is insisted by appellant, require the application of one of the oldest principles of equity, viz., "he who asks equity must do equity." The Statute of Limitations is largely the defense interposed to bar the relief asked for by appellant (defendant below) in his answer.

There can no serious doubt arise, upon a reading of this record, but that in the fall of 1884 DeWalsh expended over $1100 in money for labor, materials, etc., in improving and remodeling the premises of appellee. The receipted bills and other evidence in the record clearly established this, and it is not seriously denied. Some contention is made as to one item of mill work having been paid by Braman, but we are disposed, without hesitancy, to class it with other items paid by DeWalsh. It is hardly reasonable to infer that this large expenditure was intended to be gratuitous, although the two

parties to this action were at that time fast friends. The record does not disclose any payment. It may thus be considered that an indebtedness was created and a relation of debtor and creditor established between the parties. The title to the premises on which the improvements were made was in appellant, as trustee for appellee. DeWalsh had paid no part of the purchase money. The legal title being in appellant, he was procured to improve the premises at the request of appellee and to greatly enhance its value. Can appellee now compel a conveyance in a court of equity from appellant before he shall have reimbursed appellant for such improvements, even though, were appellant asking affirmative relief or attempting to recover in an action at law, his debt would be barred by the Statute of Limitations?

It may be conceded that at the time of the filing of this bill by appellee, appellant was in no position to have maintained a suit at law on his indebtedness, for the reason that a plea of the Statute of Limitations would have been a defense. In fact, the record shows that such an action, brought by DeWalsh to recover for this expenditure, was then pending in a court of law and to which such a plea had been interposed. It may be conceded further that the equitable rights or relief asked by appellant in his answer would not have been granted him by a court of equity, were he, at its bar, himself asking affirmative relief. Under the principles and doctrines of equity, however, before the complainant can get from the court the relief asked for by him, he must secure to the defendant that to which he is justly entitled by the principles and doctrines of equity. If there is a distinctively equitable right to which the defendant is entitled, even though not at common law, the court will make it a condition precedent to the relief of the complainant that he shall grant to the defendant such equitable right. More especially is this true where the rights of the parties grow out of the same subject matter or transaction. Pom-

eroy, in his work on Equity Jurisprudence, (secs. 385, 386,) says: "The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its equitable interposition and aid unless he has acknowledged and concluded, or will admit and provide for, all equitable rights, claims and demands justly belonging to the adversary party and growing out of or necessarily involved in the subject matter of the controversy." "According to its true meaning, therefore, the terms imposed upon the plaintiff as the condition of his obtaining the relief must consist of the awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not perhaps by those of the common law,—something over which he has a distinctively equitable right. In many cases the right or relief thus secured to or obtained by the defendant under the operation of the rule might be recovered by him if he, as plaintiff, the parties being reversed, had instituted a suit in equity for that purpose. But this is not indispensable, nor even is it always possible. The rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant which could not be obtained by him in any other manner,—that is, which a court of equity, in conformity with its settled methods, either would not or even could not have secured or conferred or awarded by its decree in a suit brought for that purpose by him, as the plaintiff."

The master in chancery of the court to whom this cause was referred to report his conclusions of law and fact from the testimony, reported, among other findings heretofore suggested, that all the material allegations of defendant's answer were proved; that DeWalsh is a more credible man than Braman; that his testimony is corroborated by other witnesses; that Braman's testi-

mony is uncorroborated, and his manner upon the witness stand was not such as to inspire confidence in him or in the good faith of his actions. To all the different findings of the master exceptions were presented and all sustained by the court. The master found that frequent demands had been made by DeWalsh for a settlement, and promises by Braman to pay for these expenditures. It is insisted by appellee, however, that the Statute of Limitations was a bar to any relief of this character. The Statute of Limitations does not strictly apply to cases in equity. It is true that equity generally follows the law, and the period that the statute requires to bar an action at law is in equity called *laches*. (*Greenman* v. *Greenman*, 107 Ill. 404.) The strict construction that is given the statute in actions at law is not always favored in courts of equity, and mere lapse of time, however great, will not bar a recovery if an excuse for the delay in enforcing the remedy be given which appeals to the conscience of the chancellor, and is such as would render it inequitable that the bar should be interposed. (*Harris* v. *McIntyre*, 118 Ill. 275.) In the case of *Booth* v. *Hoskins*, 75 Cal. 271, an action was instituted by Booth to quiet title and set aside a certain deed to Hoskins as a cloud upon his title. By answer the defendant set up the execution of the deed as security for certain money advanced by him to the plaintiff. The same matter was set up by him in a cross-complaint. The plaintiff answered the cross-complaint, admitting the advancement and execution of the deed but denied the right of defendant to any relief, for the reason that the debt of defendant was barred by the Statute of Limitations. The court found the deed to be a mortgage and that the debt was barred by the statute, but in the opinion say: "But were the plaintiffs entitled to any relief without first paying the defendants? The whole case shows that Booth justly owed the defendant all the money claimed by him. Common honesty requires a debtor to pay his just debts if he is able to do so, and

the courts, when called upon, always enforce such payments if they can.    The fact that a debt is barred by the Statute of Limitations in no way releases the debtor from his moral obligation to pay it.    Moreover, one of the maxims which courts of equity should always act upon is, that he who seeks equity must do equity.    In accordance with this maxim we think the plaintiffs should be denied any affirmative relief until the money justly due the defendant is paid."

The declaration in writing signed by DeWalsh, certifying that he had no pecuniary interest in these premises and held the title in trust for Braman, we do not consider as affecting the true merits of the case.    It was executed very soon after the deed was made and before the expenditure of these moneys by appellant.    He had paid no part of the purchase money and at that time had no real pecuniary interest in the premises, and he did hold the title in trust for Braman.    It is true, also, that he testifies that when he signed it, it was represented to him as another instrument, and that he knew nothing of its character till he saw it when recorded, seven years after.

In the present case we hold the application of these equitable principles should have been made by the court below in the rendition of its decree.    We have found that this indebtedness was due to appellant, and while it may or may not have been barred in an action at law or for affirmative relief by him, still, in an action against him seeking to compel a conveyance of this property the title to which he held, the maxim that "he who asks equity must do equity" is applicable, and should have been enforced.    Appellant had an equitable right growing out of the same subject matter.    He should not have been deprived of it.

It was error in the trial court to sustain the exceptions to the master's report, and to enter the decree directing the conveyance from appellant and wife to appellee without requiring the payment to appellant of the amount

equitably due him for his expenditures on this property, as shown by the evidence. The cause will be reversed and remanded, with directions to the circuit court of Cook county to enter a decree requiring appellant and wife to make proper conveyance to appellee free from all encumbrance created by him, on the payment by appellee to DeWalsh of $1118.77, with legal interest from December 21, 1894,—the date of the master's report,—and if such payment be not made within a reasonable time to be fixed by the court, then that the bill of complaint be dismissed and appellee be barred from hereafter asserting any further relief in the subject matter in controversy.

*Decree reversed.*