𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

UNITED CIGARETTE MACHINE CO., LIMITED, V. BROWN.

September 11, 1916.

Absent, Sims, J. *

1.  CORPORATIONS—*Paramount Lien on Stock—Creation by Charter—Limitation of Actions.*—A paramount lien in favor of the company upon all shares of stock registered in the name of each member and upon all dividends thereon for all debts, liabilities, and engagements of the stockholder to the company may be created by the charter of the company, and when created it is unaffected by the statute of limitations.

2.  EQUITY—*Complainant Must Do Equity—Conditional Relief.*—A court of equity may always require him who seeks equity to do equity, and in a case in which the rules and principles of equity demand it, it may condition the grant of relief sought from it by a complainant with the enforcement of the claim or equity held by the defendant which, by reason of the statute of limitations or a former judgment, the latter could not enforce affirmatively or in any other way.

3.  EQUITABLE LIEN—*Limitation of Actions—Pledges.*—There is a marked distinction between an action at law to recover judgment for a legal demand and a proceeding in equity to enforce an equitable lien for the same demand. The remedy at law may be barred by the statute of limitations, but the statute does not extinguish the debt, and a lien therefor may be enforced in equity although the demand be barred. So also a pledge may be enforced, though the debt be barred.

4.  DAMAGES—*Liquidated.*—Damages which do not lie in mere opinion, but can be readily ascertained by calculation or computation are liquidated and may be set off against a liquidated demand.

Appeal from a decree of the Corporation Court of the city of Lynchburg. Decree for the complainant. Defendant appeals.

*Reversed.*

---

\* Case was submitted before Judge Sims took his seat.

The opinion states the case.

*Coleman, Easley & Coleman,* for the appellant.

*Harrison & Long,* for the appellee.

Cardwell, P., delivered the opinion of the court.

The bill in this cause was filed by appellee, W. T. Brown, against appellant, the United Cigarette Machine Company, Limited, in which it is averred that in pursuance of a contract theretofore entered into, between the Winston Cigarette Machine Company and the defendant company (spoken of hereafter in this opinion as the Winston Company and the United Company respectively) the Winston Company sold to the United Company certain patents and rights relating to cigarette machines and inventions in cigarette machinery, including especially a machine known as the "Briggs" cigarette machine, in which agreement the Winston Company retained the right to sell Briggs machines in the United States and Canada, but granted to the United Company the sole and exclusive right to sell the same in other parts of the world; that the consideration to the Winston Company under this agreement was £25,000, to be paid and satisfied by the allotment to the Winston Company, or as it might direct, of 25,000 shares of one pound each of the capital stock of the United Company and that the Winston Company having directed that the entire amount of the said stock be issued to its stockholders, the same was so issued by the United Company in which distribution of said shares 3,577 were issued to the complainant, Brown, of which he still owned 2,577 shares, with the incidental right to receive dividends thereon as the same were earned and declared, but that the United

Company, since 1905, had failed and refused to pay such dividends to the complainant until compelled to do so, and at the last meeting of its stockholders on the 6th of May, 1913, in a resolution declaring dividends on the shares of its stock for the year ending December 31, 1912, the shares held by the complainant were excepted and no dividends declared thereon. The bill further averred that the refusal of the United Company to pay or declare dividends on complainant's stock was based on the claim that he was responsible for having, as president of the Winston Company, instigated, for his own advantage and profit certain breaches of the contract between the United Company and the Winston Company under which the shares of stock were issued to the stockholders of the Winston Company, and that the United Company asserted a lien on complainant's shares of stock and all dividends accruing thereon under section 24 of its charter, or articles of association, for complainant's alleged liability to it in the premises. It is further averred that the breaches of the contract charged were certain alleged sales of Briggs machines to be used outside of the United States and Canada, and, moreover, that the United Company also made claim against complainant for the failure of the Winston Company properly to fill an order by the United Company for a Briggs machine; that the alleged sales of Briggs machines in violation of the contract were two in the year 1900 to be used in Porto Rico, two in the year 1903 for use in Lima, Peru, one in the spring or summer of 1904 to the Imperial Tobacco Company, Limited, of St. Johns, Newfoundland, to be used in its factory there, three in 1904 for use in Valparaiso, Chile; for the sale of each of which said machines the United Company claimed from $1,000 to $1,500; and that the order for the Briggs machine alleged to have been improperly filled was

said to have been given on or about January 16, 1906, the complaint being that an old style Briggs machine was shipped instead of the latest improved model, resulting in an alleged loss to the United Company of $618.13.

Complainant further averred that in June, 1912, he sold 1,500 shares of his stock but lost the sale because the United Company refused to transfer the stock to the purchaser until he (complainant) settled his obligations to the company. It is charged in the bill that complainant did not believe the United Company, defendant, intended to attempt to establish the alleged obligations of the complainant, because, in addition to the fact that the obligations were wholly without foundation (but on this point. complainant expressly declined to tender issue), the alleged claims were barred both in Virginia and in North Carolina by the statute of limitations, in consequence whereof the lien therefor had become inoperative and of no effect— his contention being that the United Company's demand was "unliquidated" and could be liquidated only in a court of law, and, as the statute of limitations barred any action at law on its demands, the United Company could not avail itself of its lien on complainant's shares of stock anywhere.

To this bill the defendant, the United Company, filed an answer, which it was prayed might be treated as a cross-bill, asking relief against the complainant, Brown; the answer of the United Company admitting (1) that of the 25,000 shares of its capital, which under the agreement between it and the Winston Company were to be allotted to the latter, or as it might direct, 2,577 of the said shares issued to complainant, Brown, still stood registered in his name on the transfer books of the United Company, and (2) that section 24 of the articles of association of the United Company was correctly set forth in complainant's

bill; but the United Company, in its answer, set forth *in totidem verbis* sections 30 and 119 of its articles of association to which no reference was made in the bill, and filed with its answer a certified copy of said articles of association. The answer further averred that when the agreement between the Winston Company and the United Company was executed, the complainant had become president of the Winston Company and that the agreement was signed and executed on behalf of that company by him; that he, as president, managing director, and chief, if not the sole, business representative, as well as a large stockholder of the Winston Company, had for years dominated and directed its affairs, acting in the name of the company, but in his own interest and for his own benefit as well; that he had sold, in violation and disregard of the agreement, numerous Briggs cigarette machines, to be used, as he well knew and intended, outside of the United States and Canada, including two sold in the year 1900 to be used in Porto Rico, one in 1903 to be used in Lima, Peru, one in 1904 to be used at St. Johns, Newfoundland, and three in 1904 to be used in Valparaiso, Chile; that each of these machines was sold at a price largely in excess of the price ($500.00) at which the Winston Company agreed to manufacture and furnish Briggs machines to the United Company, and that all of them had been paid for by the respective purchasers, which payments the complainant, individually and personally, got the benefit of, in whole or in part, although ostensibly they may have been made to the Winston Company; and the answer distinctly charged that the complainant knowingly sold or supplied, either in his own name or in the name of the Winston Company, the aforesaid eight Briggs machines to purchasers outside of the United States and Canada, thereby depriving the United Company of its just rights

and profits in the premises and of a material part of the consideration for the very shares of its capital stock that now stand in complainant's name, upon which shares as well as upon all dividends thereon a lien was explicitly given the United Company by its articles of association for any liability of the complainant to said company; and the answer further distinctly charged that the complainant, for his own enrichment, procured, directed, instigated and accomplished, by and through his official and representative relations with the Winston Company, the violation of the aforesaid agreement between the United Company and the Winston Company, thereby realizing for himself and the Winston Company $2,000 on each machine, which the United Company was entitled to and otherwise could and would have made and enjoyed.

It was further averred in its answer that the United Company, under the agreement between it and the Winston Company, was to pay for the manufacture and delivery on board cars of the latest improved model of Briggs machines the sum of $500 each, and that on or about January 16, 1908, the United Company placed with the Winston Company an order for a Briggs machine of the latest improved model, to be shipped to W. R. Grace & Co., of New York City, and to be forwarded by them to Lima, Peru, in response to which order complainant, Brown, shipped a machine to Grace & Co. with sight draft for $500 attached to the bill of lading therefor; that the draft was paid and the machine forwarded without being unpacked or delivered, but that upon its arrival at its ultimate destination it was discovered that the machine was not the latest improved model, but an old style machine, and probably second hand at that; that the machine was, of course, rejected by the purchaser and thrown back on the

United Company's hands, and that complainant, Brown, refused to furnish a new machine of the type and style ordered, in place of the old machine, with the result that the United Company had to construct and manufacture a new machine at its own shops in Lynchburg with which to replace the old machine foisted upon it by Brown, and for which he had collected the price of a new machine; that the United Company was out of pocket $500 paid for the machine, besides $118,13 paid for its transportation to Lima and back, and still had on its hands the old machine which was worthless; and that the Winston Company at the instigation of Brown, its sole business representative, declined and refused to take back the old machine or refund the price thereof. The said answer and cross-bill further charged that of Brown's dishonest conduct in the premises he was the beneficiary, and insisted that Brown was therefore liable to the United Company to the extent of the profits realized upon the sales of the eight Briggs machines in violation of the contract, and also for the $618.13 out of which Brown had cheated the United Company by palming off on it an old machine in place of the new one ordered; and, further, that the United Company had a lien upon the shares of its capital stock standing in Brown's name and had the right to withhold and retain the dividends thereon and apply the same in or towards satisfaction of the liability of Brown in the premises.

The provisions of its articles of association upon which the United Company based its claim to a lien on Brown's stock are as follows:

"24.   The company shall have a first and paramount lien upon all the shares registered in the name of each member (whether solely or jointly with others) for his debts, liabilities, and engagements, solely or jointly with any other person to or with the company, whether

the period for the payment, fulfilment, or discharge thereof shall have actually arrived or not. And such lien shall extend to all dividends from time to time declared in respect of such shares."

"30.   The directors may refuse to register a transfer of any shares upon which the company has a lien and in the case of shares not fully paid up may refuse to register a transfer to a transferee of whom they do not approve."

"119.   The directors may retain any dividends on which the company has a lien, and may apply the same in or towards satisfaction of the debts, liabilities, or engagements in respect of which the lien exists."

With respect to the bill brought by the United Company against Brown in the Lynchburg corporation court in November, 1908, the answer and cross-bill of the United Company in this suit avers that while it is true that its bill filed in November, 1908, was dismissed, the dismissal was upon the *sole* ground that Brown was a non-resident of the State of Virginia, and, therefore, the court did not have jurisdiction of the cause; and with reference to the suit in equity subsequently instituted by the United Company in the United States Court for the Western District of North Carolina, its answer and cross-bill here avers that the bill in the United States Court of North Carolina was likewise dismissed, but the dismissal was without prejudice, and upon the sole ground that the Federal court of equity was without jurisdiction, and the United Company in its answer and cross-bill in this cause, calls attention in this connection to the fact that in the opinion of the circuit court of appeals, affirming the last-mentioned dismissal, it was distinctly held that the liability of Brown to the United Company, under the allegations of the bill, had not been questioned, and that

the United Company's demand was supported "by an array of authority"—citing a number of decisions and text-writers.    The United Company's answer and cross-bill also calls attention in this connection to the further fact that the United States Circuit Court of Appeals also held (citing authorities) that the lien reserved by the United Company's articles of association on the shares of its members embraced the demand asserted by the United Company against Brown; so that the United Company insisted in its answer and cross-bill in the instant cause that the only question determined by the dismissal of its first bill, brought in the Corporation Court of Lynchburg, was that the court did not have jurisdiction of Brown, and that the only question determined by the second suit instituted by the United Company against Brown was that the Federal equity court did not have jurisdiction of a suit brought by the United Company, *as plaintiff and actor*, to enforce its lien upon Brown's shares of stock.    The United Company's answer and cross-bill also points out that its right, under section 119 of its articles of association, *to retain the dividends on Brown's stock was not involved or dealt with in either of the prior suits*, and insisted that Brown had hitherto succeeded, by technical and evasive tactics, in defeating the jurisdiction of the court in each case and avoiding a decision on its merits; *that he himself having now invoked the aid a of court of equity, it no longer lay in his mouth to call in question that court's jurisdiction in the premises*—this under the maxim of equity that he who seeks equity must do equity.

In other words, the United Company's answer and cross-bill makes the contention, in the alternative, that Brown now having brought himself into a court of equity and impleaded the United Company, the court could and should, regardless of any question whether the

United Company, *as plaintiff and actor,* could itself maintain an independent suit in equity, proceed to adjudicate, fix and determine the amount of Brown's liability to the United Company and enforce its lien therefor on Brown's stock and dividends; and, accordingly, the United Company prayed that, if need be, and so far as might be necessary to the United Company's protection in the premises, its answer might be treated as a cross-bill for that purpose.

Brown demurred to the United Company's answer and cross-bill, which demurrer the court sustained and by its decree then entered, from which this appeal is taken, adjudged (1) that the United Company pay to Brown the sum of $1,255, with interest thereon from May 6, 1913, together with his costs; (2) that the claims asserted by the United Company against Brown were unliquidated and barred by the statute of limitations; (3) that the United Company's asserted lien on Brown's shares of stock is only "potential" and would have to be "established" at law; and (4) that the United Company be enjoined and restrained from withholding further dividends on Brown's stock, or refusing to transfer his stock, or otherwise denying to him "his right as a stockholder."

In the petition for this appeal there are five assignments of error in said decree, but we deem it unnecessary to consider these assignments *seriatim.* It seems perfectly clear to us that the contention of the appellant, the United Company, that it has, by virtue of the provisions of its articles of association (sections 24, 30 and 119, *supra*), a lien upon appellee's shares of stock here in question and the dividends accrued and accruing thereon for the liabilities of appellee to the appellant set forth in its answer, treated as a cross-bill, if these alleged liabilities should be sustained. Ap-

pellee has nowhere denied his liability for the demands
made upon him by the appellant, but has, according to
the averments of the answer and cross-bill, studiously,
artfully and successfully avoided, up to the time
of the institution of this suit by him, taking issue with
appellant upon its alleged demands and its right to
enforce them as a lien upon his shares of stock and divi-
dends thereon, as provided by appellant's articles of
association, which are binding upon appellee as upon
every other holder of the association's stock.

In the case of *United Cigarette M. Co.* v. *Winston
Cigarette M. Co., et al,* above mentioned, reported in
194 Fed. 960, 114 C. C. A. 583, the opinion of the court
says: "The liability of Brown to the complainant, if
the allegations of the bill be sustained, has not been
questioned and is supported by an array of authority."
Citing a number of text-book and decided cases.

Speaking of such a lien as appellant is asserting
against and upon the stock of appellee in this cause,
and the right of a corporation to create a lien upon its
shares of stock for the debts and liabilities of the stock-
holders to the company, Cook on Corporations (6th
ed.), sec 522, says: "Such a lien as this in favor of
the corporation may be created by statute or by
charter, and the weight of authority holds that it may
be created by by-law."

This court held in *Bohmer* v. *City Bank,* 77 Va. 445,
that where the charter of a bank provides that the
bank shall have a prior lien upon any stock held by a
stockholder for any debt of the stockholder to the
bank, the lien of the bank upon the stock is a para-
mount one, and the bank has the right to be first
satisfied before transferring the stock; that persons
dealing with a corporation must take notice of and
are affected by the provisions contained in its charter.

We are further of opinion that the lien upon the stock of appellee and dividends thereon asserted by appellant in this cause, is not affected by the statute of limitations, even assuming that appellee, Brown, could have made that defense by demurrer.

"The lien will continue for the benefit of the cor-poration, although the debt be barred by the statute of limitations." Cook on Corp., sec. 527, citing among other decided cases *Brent* v. *Bank of Washington*, 10 Peters 596, 617, 9 L. Ed. 547, which case is as follows:

Brent died the owner of 650 shares of the stock of the bank. He was an endorser on certain promissory notes held by the bank, and the charter of the bank provided that its stock was transferable only on the books of the bank by the holder of the stock. When Brent died he was largely indebted to the United States. His executors applied to the bank to transfer the stock, which the bank refused to do unless the notes held by it and endorsed by Brent were paid. Meanwhile the bank had sued the executors of Brent on the notes, and upon a plea of the statute of limitations, a verdict and judgment had been rendered against it. The executors afterwards brought a bill in equity for the use of the United States to compel the bank to transfer the stock to pay the debt due to the government, the contention being that the debt due to it was a preferred one, and the bank filed an answer in which it asserted a lien upon the stock to pay its debt. The lower court decreed a sale of the stock and the application of the proceeds first to the payment of the debt of the bank, and, second, to the payment of the debt to the United States. Counsel for the United States insisted that all right of the bank was barred by the statute of limitations and by the

verdict and judgment against it on the plea of that statute, but the Supreme Court said: "But they allege that the debt is extinguished by the verdict in their favor, rendered on a plea of the statute of limitations. We cannot take this case out of the established rule; the legal remedy is barred, but the debt remains as an unextinguished right, and the bank, when called into a court of equity, may hold to any equitable lien, or other means in their hands, till it is discharged."

That case, along with a large number of text-books and decided cases, is cited in *Farmers L. & Tr. Co.* v. *Denver, &c. R. Co.,* 126 Fed. 46, 60 C. C. A. 588, where the United States Circuit Court of Appeals, in an able and convincing opinion, held that a court of equity may, in a case in which the rules and principles of equity demand it, condition its grant of relief sought by a complainant with the enforcement of a claim or equity held by a defendant which, by reason of the statute of limitations or otherwise, the latter could not enforce in any other way.

"A court of equity may always require him who seeks equity to do equity, and in a case in which the rules and principles of equity demand it, as they do in the case at bar, it may condition the grant of relief sought from it by a complainant with the enforcement of the claim or equity held by the defendant which, by reason of the statute of limitations or a former judgment, the latter could not enforce affirmatively or in any other way. *Central Imp. Co.* v. *Cambria Steel Co.,* 201 Fed. 824, 120 C. C. A. 121, and authorities there cited. See also, 1 Pom. Eq., §386, §393."

There is a very marked distinction between an action at law to recover judgment for a legal demand and a proceeding in equity to enforce an equitable lien for the same demand. The remedy at law may be barred

by the statute of limitations, but the statute of limitations does not extinguish the debt, and a lien therefor may be enforced in equity although the debt be barred. This is nowhere better settled than in Virginia, *Bowie* v. *Poor School*, 75 Va. 300; *Wolf* v. *Violett*, 78 Va. 57; *Paxton* v. *Rich*, 85 Va. 382, 7 S. E. 531, L. R. A. 639; *Hamilton* v. *Glenn*, 85 Va. 906, 9 S. E. 129; *Tunstall* v. *Withers*, 86 Va. 896, 11 S. E. 565.

In *Bowie* v. *Poor School*, *supra*, it is held that, there being no undertaking to pay the debt in the deed securing its payment, though the remedy at law may be barred by the statute of limitations, the debt is not thereby extinguished, but the lien therefor continues unaffected by any lapse of time short of a period sufficient to raise a presumption of payment.

Another distinction equally as well established by the line of authorities to which the cases cited belong is tersely stated in 16 Cyc. p. 141, as follows: "Since the doing of equity is imposed as a condition of obtaining equitable relief, many things may be required which defendant could not compel if driven to an independent action." Citing in a note a number of decided cases, among them *DeWalsh* v. *Braman*, 160 Ill. 415, 43 N. E. 597, which is directly in point here, and in which there is an able and elaborate opinion discussing and upholding the equitable principle which we have just quoted above.

In the case at bar, it is, as we view the authorities, immaterial whether appellant could or could not have maintained an affirmative suit in equity to enforce its lien on appellee's stock, the latter having sought the aid of the Corporation Court of Lynchburg, sitting as a court of equity, and brought himself and the appellant before the bar of that court, it was manifestly within the powers of the court, and was its duty, to

condition any relief afforded appellee upon his doing equity; in other words, before granting the prayer of appellee's bill the court should have required him to discharge his liabilities to appellant, in accordance with the terms and conditions of its articles of association under which appellee holds his stock, which is the subject of litigation in this suit.

We are further of opinion that the lower-court erred in its view that the claims asserted by appellant against appellee are unliquidated and that appellant's lien therefor is only "potential" and would have to be "established" at law. Appellant's articles of association are a contract between it and its shareholders, and by the terms of that contract (sec. 24) it is expressly provided that the company shall have a first and paramount lien on all the shares registered in the name of each. member for his *debts, liabilities and engagements,* solely or jointly with any other person, to or with the company, and that such lien shall extend to all dividends from time to time declared in respect to such shares; and it is further provided (sec. 119) that the directors may retain the dividends on which the company has a lien and may apply the same in or towards satisfaction of the *debts, liabilities or engagements* in respect of which the lien exists.

This court held in *Tidewater Quarry Co.* v. *Scott,* 105 Va. 160, 52 S. E. 835, 115 Am. St. Rep. 864, 8 Ann. Cas. 736, that unliquidated damages are such as rest in opinion only, and must be ascertained by a jury, wherein the amount to be settled rests in the discretion, judgment or opinion of a jury and there are no data for computation and the damages cannot be ascertained by any mode of calculation; but it is otherwise when the damages can be readily ascertained. The opinion of the court in that case illustrates what

are and what are not unliquidated damages, and holds that if the damages do not lie in mere opinion, but can be readily ascertained by calculation or computation, they may be set off against a liquidated demand.

In this case appellant's claim asserted against appellee is for the difference between the price at which Briggs machines were to have been furnished to appellant under the contract and the price at which appellee, Brown, sold certain of these machines in violation of the contract. The contract fixes the prices at which the machines were to have been manufactured and delivered to appellant, and it provided that appellant should have the exclusive right to supply the demand for the machines except in the United States and Canada. In violation of this contract, as averred by appellant in its answer to appellee's bill, a certain number of said machines were sold by appellee outside of the United States and Canada, and the amount to which appellant thereby became entitled is simply a matter of subtraction from the price at which the machines were sold the price which appellant was to have paid for them.

In *DeWalsh* v. *Braman, supra,* which involved a discussion of the principles and doctrines of equity which the appellant in the instant case invokes, the court held that before Braman, who had impleaded DeWalsh seeking equitable relief, could get from the court the relief asked for by him, he must secure to the defendant, DeWalsh, that to which he was justly entitled by the principles and doctrines of equity. "If there is a distinctly equitable right to which the defendant is entitled, even though not at common law, the court will make it a condition precedent to the relief of the complainant that he shall grant to the defendant such equitable rights. More especially is this

true where the rights of the parties grow out of the same subject matter of transaction."

We are further of opinion that the decree of the lower court here complained of is erroneous in that it enjoins appellant from refusing to transfer the stock of appellee in question.   As we have seen, section 30 of appellant's articles of association provides that the directors of the company may refuse to register a transfer of any shares of its stock upon which the company has a lien.   The authorities cited, to which a great number of others might be added, show clearly and conclusively that the statute of limitations does not extinguish a right, but merely bars the remedy.

"If there is an actual pledge, and the debt becomes barred, this does not give the debtor a right to reclaim the pledged property.   The debt is not extinguished; the statute only takes away the remedy."   *Hulbert* v. *Clarke*, 128 N. Y. 295, 28 S. E. 628, 14 L. R. A. 59, quoting from the opinion of the court in *Shaw* v. *Silloway*, 145 Mass. 503, 14 N. E. 783, see also *Spiers* v. *Hartley*, 3 Esp. 81; *Va. Hot Springs Co.* v. *McCray*, 105 Va. 474, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179; and Cook on Corporations, sec. 530, where that learned author says:   "When a corporation has a lien upon the stock of those of its stockholders who are indebted to it, it may refuse to allow the transfer of the stock until the debt is paid or secured to its satisfaction."   Citing numerous cases.

In the case at bar, as we have seen, appellee, Brown, in his bill expressly declined to tender issue upon his liability to appellant and by his demurrer to the answer of appellant, prayed to be treated as a cross-bill, he concedes the truth of all the averments thereof.

For the foregoing reasons we are of opinion that the decree complained of has to be reversed, and this court

will enter the decree which the lower court should
have entered, overruling appellee's demurrer to ap-
pellant's answer and cross-bill, and remand the cause
to that court to be further proceeded with in accord-
ance with the views expressed in this opinion.

*Reversed.*