W. C. Mitchell Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 49986.   Promulgated January 31, 1933.

*Frank W. Wilson, C. P. A.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

Lansdon: The respondent has asserted a deficiency in income tax for the fiscal year ended June 30, 1928, in the amount of $5,499.68. The only issue is whether petitioner's taxable income for the year

under review should be reduced by the application of a statutory net loss alleged to have been sustained either in 1926 or 1927. In its original petition the petitioner pleaded that its taxable income for 1928 should be reduced by the amount of $40,005.82, the amount of a net loss alleged to have been sustained in 1927. At the hearing it amended its petition to allege that such loss was sustained in the year 1926.

Petitioner is a Minnesota corporation, with its principal office at Duluth, where it is engaged in buying and selling grain on commission. On July 1, 1918, it sold its president, W. C. Mitchell, certain shares of its treasury stock and received therefor a promissory demand note of the face value of $40,000. On June 30, 1920, payments on such note were acknowledged by endorsements on the back thereof in the amounts of $2,500 and $3,466.85, or a total of $5,966.85. Such endorsements left a balance of $34,095.75, on which no payments have ever been made. Under the laws of Minnesota the statute of limitations ran against such note on June 30, 1926. On March 15, 1927, the maker of the note died and immediately thereafter the petitioner was advised by its attorney that the note was outlawed and uncollectible and on June 10, 1927, it was charged off the petitioner's books as worthless, but the amount thereof was not claimed as a deduction on the petitioner's income tax return for that year.

The petitioner's return for the fiscal year ended June 30, 1927, disclosed no taxable income, but upon audit thereof the Commissioner determined a deficiency in the amount of $1,472.07. After conference such deficiency was reduced to $93.92, based on a net corporate income in the amount of $2,695.69, reduced to taxable income of $695.69 by corporation credit of $2,000; and, thereafter, on January 28, 1929, the petitioner and the Commissioner entered into an agreement as authorized by section 606 of the Revenue Act of 1928, which in words and figures was as follows:

AGREEMENT AS TO FINAL DETERMINATION OF TAX LIABILITY.

This Agreement, made in duplicate under and in pursuance of Section 606 of the Revenue Act of 1928, by and between W. C. MITCHELL COMPANY, a taxpayer residing at, or having its principal office or place of business at 307, Board of Trade Building, Duluth, Minnesota, and the Commissioner of Internal Revenue;

Whereas, there has been a determination of the tax liability of said taxpayer in respect of federal income tax for the fiscal year ended June 30, 1927, in the principal sum of ninety-three dollars and ninety-two cents ($93.92) ; and

Whereas, said taxpayer hereby agrees to this determination and consents to the assessment and collection of any deficiency in tax included in the amount of the principal tax liability so determined, together with any penalty or interest applicable thereto as provided by law, and/or to accept any abatements, credit, or refund made in accordance with such determination, together with any interest due thereon as provided by law;

Now, THIS AGREEMENT WITNESSETH, that said taxpayer and said Commissioner of Internal Revenue hereby mutually agree that the principal amount of such liability so determined shall be final and conclusive if and when this agreement is approved by the Secretary of the Treasury or the Undersecretary.

In witness whereof, the above parties have subscribed their names to these presents in duplicate.

Signed this 12th day of December, 1928.

W. C. MITCHELL COMPANY,
*Taxpayer.*

By: Mrs. W. C. MITCHELL,
*Treas.*

D. H. BLAIR,
*Commissioner of Internal Revenue.*

ATTEST,

C. HASTINGS,
*Secretary.*

The above agreement has been approved by the Secretary of the Treasury in accordance with the provisions of section 606 of the Revenue Act of 1928.

The statutory provision authorizing such a closing agreement is section 606 of the Revenue Act of 1928, as follows:

(a) *Authorization.*—The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

(b) *Finality of agreements.*—If such agreement is approved by the Secretary, or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit, made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

(c) Section 1106 (b) of the Revenue Act of 1926 is repealed, effective on the expiration of 30 days after the enactment of this Act, but such repeal shall not affect any agreement made before such repeal takes effect.

The respondent argues that in view of the closing agreement set out above, the Board is foreclosed from receiving proof of an alleged net loss sustained in 1927 and applicable to petitioner's tax liability for 1928. We are unable to agree with this contention since the petitioner is not now asking for any redetermination of its tax liability for 1927. It does contend, however, that for the purpose of applying the provisions of section 117 of the Revenue Act of 1928, in the computation of its taxable income for 1928, it should be permitted to prove a statutory net loss for 1927, when

such loss was not claimed in that year and formed no part of the basis upon which tax liability therefor was determined. It argues that the only thing finally determined by the closing agreement is the tax liability for the year involved and that there are ample precedents for considering items of income and deductions relating to years not before the Board when such matters are necessary to the determination of the true tax for the year involved.

Section 274 (g) of the Revenue Act of 1926 is as follows:

The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been over paid or under paid.

The closing agreement notwithstanding, we are of the opinion that the provision set out above is applicable to the situation here. Whether or not there was a net loss in either of the two preceding years is a fact in relation to the tax for the year here under review. That the petitioner has agreed to a determination of tax liability for 1927 which was computed without consideration of the net loss now pleaded is not material. The limitation effected by such agreement bars only the reopening of tax liability for the year covered thereby and in no way estops the petitioner from pleading and proving any fact overlooked in such year but related to the tax of a subsequent year. To hold otherwise would permit the perpetuation of an error to affect tax liability for subsequent years, a result quite as likely to be prejudicial to the revenue as beneficial to taxpayers and one which, in our opinion, was not within the intention of Congress when section 606 of the Revenue Act of 1928 was enacted.

Petitioner's contention that the amount of the note in question was deductible, as a bad debt, from its income for the fiscal year ended June 30, 1926, is without merit. The running of the statute of limitations does not extinguish a debt or render it worthless, but merely provides the debtor with an affirmative defense which may be pleaded against forcible collection. *Bank of the United States* v. *Donnally*, 8 Pet. 361; *Leo Stein*, 4 B. T. A. 1016; *Warner L. Colvert*, 6 B. T. A. 623; and *Ralph H. Cross*, 20 B. T. A. 929. Moreover, as a condition precedent to deductibility, a taxpayer, under the provisions of section 234 (a) (5) of the Revenue Act of 1926, must ascertain the debt to be worthless and charge the amount thereof off its books in the taxable year. The petitioner did neither in the year ended June 30, 1926. It follows, therefore, that the note was not deductible in that year.

The petitioner also contends, presumably in the alternative, that the note in question was ascertained to be worthless and charged off

its books in the fiscal year ended June 30, 1927. The maker of the note died on March 15, 1927, and his estate passed into the hands of an executor. In the State of Minnesota the executor of an estate can not waive the statute of limitations. Mason's General Statutes, §8814. It is apparent, therefore, that, unless the petitioner had a lien against Mitchell's stock on account of the debt due it that could be enforced either in law or at equity, despite the running of the statute of limitations, the debt was worthless at June 30, 1927, and the petitioner was entitled to deduct the amount thereof from its income in that year.

The statutes of Minnesota provide that "stock shall not be transferred upon the books of the corporation while any installment thereon remains delinquent nor while any indebtedness of the record holder thereof to the corporation remains unpaid." Mason's Minnesota Statutes, §7463. The record fails to disclose whether the stock in question was ever issued to Mitchell, but under the language of the statute this is not material, since the law prohibits the transfer whether the debt is for an installment of the purchase money or for any other purpose. If the stock was ever actually transferred to Mitchell on the books of the petitioner, clearly the transaction was *ultra vires* under the laws of Minnesota. If it was not so issued the situation is squarely within the law above cited.

There still remains, however, the very important question as to whether the provisions above cited create a lien in favor of the corporation on stock owned by a debtor. The Supreme Court of Minnesota, in *United States & Canada Land Co.* v. *Sullivan*, 113 Minn. 27; 128 N. W. 1112, held "that the statute now in force is sufficient to create a lien in favor of the corporation." The provision of law construed in that opinion is in the identical language cited above. We think that opinion is controlling. The petitioner had a lien on the stock in question so long as Mitchell's debt to it for any purpose was unpaid. In the same opinion the court said: "It (such a lien) may be enforced in equity." Cf. *Benson* v. *Saffert-Gugisberg Cement Const. Co.*, 161 Minn. 269; 201 N. W. 424.

In the instant proceeding it appears, however, that the statute of limitations had run against Mitchell's debt to the petitioner prior to the date at which deduction on account of worthlessness is now claimed. It remains, therefore, for us to determine whether that fact made it impossible for the petitioner to enforce its lien against Mitchell's estate by an action in equity for the recovery of the stock. In *George A. Hormel Co.* v. *First National Bank of Le Roy*, 212 N.W. 738, the Supreme Court of Minnesota held that the statutory lien on stock for indebtedness due a corporation by the owner thereof can be lost only by waiver, surrender or estoppel. This

opinion, however, does not definitely decide that a suit to enforce a lien of the nature here involved can be maintained after the statute of limitations has run against the debt. The court does say: " But unless the corporation has waived or surrendered its lien or by its acts has estopped itself from asserting it, the lien is valid and enforceable against all the world and prior and paramount to the rights of any purchaser or pledgee, claiming under or through the stockholder." In the circumstances herein there was neither waiver, surrender, nor estoppel, unless the neglect of the petitioner to enforce its right prior to the expiration of the statutory period is to be regarded as one or another. In the same opinion it is held that " This statutory lien is never lost by mere negligence, only by waiver, surrender or estoppel," but as the statute of limitations was not at issue in that case it can hardly be said that the use of the word " only " is sufficient to dispose of this question.

In other jurisdictions where there was no statute providing expressly that such a lien is voided by the statute of limitations, the courts have held that a lien on stock created by a statute or charter is good, notwithstanding the statute of limitations has run against the debt. In *United Cigarette Machinery Co.* v. *Brown*, 119 Va. 813; 89 S.E. 850, the Supreme Court of Virginia said in its syllabi, " That where a corporation reserved a lien on shares of stock for all claims due the corporation from its shareholders, the lien is not destroyed because limitations have run against enforcement of the claims due from the stockholders." In the body of its opinion, in the same case, the court said:

There is a very marked distinction between an action at law to recover judgment for a legal demand and a proceeding in equity to enforce an equitable lien for the same demand. The remedy at law may be barred by the statute of limitations, but the statute of limitations does not extinguish the debt, and a lien therefor may be enforced in equity although the debt is barred.

In *Brent* v. *Bank of Washington*, 10 Pet. 596; 9 Law. Ed. 547, the Supreme Court said:

But they allege that the debt is extinguished by the verdict in their favor, rendered on a plea of the statute of limitations. We cannot take this case out of the established rule; the legal remedy is barred, but the debt remains as an unextinguished right, and the bank when called into a court of equity, may hold to any equitable lien, or other means in their hands until it is discharged.

We are unable to see that the fact that the debt was due for treasury stock that had been redeemed for cash at the date of sale to Mitchell and was held as an asset of the corporation removes the question here from inclusion in the rule established by the cases above cited. Whatever may be the status of such stock in the hands of a corporation, its reissue to a purchaser brings it within all the

provisions of law applicable to outstanding stock, since thereafter it is indistinguishable from similar stock issued to subscribers therefor or the transferees of such subscribers. The purchasers of treasury stock acquire no privileges therewith that are not common to other stockholders. In the light of the law of Minnesota and the various decisions above cited and discussed, we are of the opinion that at June 30, 1927, the petitioner had a lien enforceable in equity against the stock in question. Its claim for the deduction thereof as a bad debt is therefore denied.

Reviewed by the Board.

> *Decision will be entered for the respondent.*

MATTHEWS concurs in the result.