ELI J. TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES D. BOONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. A. BOONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

D. W. BOONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. F. BOONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3050–3053, 3163. Promulgated December 1, 1927.

*Lee I. Park, Esq., S. L. Walker, Esq.,* and *S. A. Blustein, C. P. A.,* for the petitioners.

*M. E. McDowell, Esq.,* and *J. Harry Byrne, Esq.,* for the respondent.

444

OPINION.

LOVE: The issues in this case have all been disposed of by stipulation except one. This one is the value, if any, at March 1, 1913, of the lease of the Brown Coal Co. for the purpose of depletion or exhaustion.

The petitioners undertook to prove the value by three witnesses. One was a partner in the Brown Coal Co., who testified that the partnership gave an option in 1913 to sell the leasehold for $300,000, including the plant and equipment. The option was never exercised. It was in effect merely an offer to sell and as such is worthless as evidence of the value.

Another witness, a mining engineer and geologist, was of the opinion that the lease had a value of $189,000 on the basis of an estimated value of 5 cents a ton for the coal in place over and above the royalty of 10 cents a ton provided by the lease. It appeared, however, that a lease of coal lands in the vicinity of this mine was made in 1913 at 10 cents a ton. While those lands were less favorably situated than petitioner's mine, we think that the testimony does not satisfactorily show that this fact would result in a difference

in value of 5 cents a ton, or what difference in value would result from the difference in location.

The other evidence as to value consisted of the statistics showing the results of operation set forth in the findings of fact (which were stipulated), and testimony as to an appraisal based thereon by the so-called Hoskold's formula. The petitioners, as a part of their proof, attempted to appraise the leasehold by this formula as it is applied in appraising mineral in place, and they contend for a valuation thus arrived at of $172,604.16.

While such appraisals are used to aid in determining value in the absence of more persuasive evidence, there are two defects in petitioners' application of the formula, which preclude us from accepting their conclusions therefrom. One is that in finding the average annual operating profit (which is one of the factors in the formula), the petitioners used the operating profits for the years from 1911 to 1915, inclusive; the other is, that they included in the figures used not only operating profits from coal sales but also those arising from selling merchandise and renting tenement houses.

As to the first, it is almost axiomatic that the ascertainment of value retrospectively must be based on facts known or reasonably in prospect at the valuation date. It therefore follows that subsequent earnings are not evidentiary of value on that date. While such earnings have been admitted in evidence by the Board, it was only as corroborative of other testimony as to prospects based on factors known at the valuation date to exist. *Appeal of Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179. In the present case, the testimony does not show that from facts known on March 1, 1913, increased earnings might then reasonably have been anticipated. It was therefore improper to employ in the calculation the profits for the years 1913, 1914, and 1915.

It was also improper to include with the operating profits from coal sales the profits from the mercantile business and tenement houses. As stated above, the formula as employed by petitioners is a method which purports to appraise mineral in place. Among the factors in the formula, as applied to a coal mine, are the operating profits per ton, the remaining number of tons in the mine, the rate at which it will be extracted. To these factors, the sale of merchandise and the renting of houses have no direct mathematical relation, however closely they may be related as business adjuncts to the mining operations. They are different kinds of businesses, affected by different conditions. When other than the prescribed factors are introduced into a formula, its validity is destroyed.

If only profits from coal sales, for the years 1908 to 1912, are used, the analytical appraisal shows a present worth March 1, 1913, of

$109,677.11. It will be seen that this amount falls short by $46,283.45 of funding the value, including replacement, of the mining plant and equipment, which was stipulated to be $155,960.56.

On the other hand, the profits from the mercantile business and tenement houses were relatively large. On an investment in buildings and fixtures valued at $23,148.87, the average operating profit during the five years preceding 1913, was $11,429.29. These profits must be considered in determining what value, if any, the leasehold had on March 1, 1913. If the leasehold as a whole had a value, the petitioners are entitled to deduct the exhaustion of such value over the remaining life of the leasehold. *Appeal of Royal Collieries Co.*, 1 B. T. A. 369.

After a careful consideration and analysis of the results of all of the operations carried on under the lease, we have found that it had a value on March 1, 1913, of $45,000. The petitioner is entitled to deductions for the exhaustion of this value over the life of the lease, which we have found to be 40 years.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by TRUSSELL, SMITH, and LITTLETON.