BENJAMIN SIEGEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE RESPONDENT.

SOPHIE SIEGEL, PETITIONER, *v.* COMMISSIONER OF INTERNAI REVENUE RESPONDENT.

Docket Nos. 42141, 42142.    Promulgated February 28, 1934.

*Fred R. Angevine, Esq.*, for the petitioners.
*James K. Polk, Jr., Esq.*, for the respondent.

#### OPINION.

MARQUETTE: These proceedings were consolidated for hearing. The following deficiencies in income tax were asserted by the respondent for the year 1923: Benjamin Siegel, $9,669.36; Sophie Siegel, $16,537.22.

The one error asserted in both proceedings is that the respondent, n determining the earnings and profits available for dividends of the Benjamin Siegel Co. (hereinafter referred to as the Company) accumulated since February 28, 1913, failed to deduct therefrom the sum of $63,952, representing net additions to the bad debt reserve shown on the books of that company.

Part of the facts were stipulated and the stipulation is made part of this report.    The material facts disclosed by the record are set forth.

On January 31, 1923, the last day of the fiscal year of the Company, it declared and paid a dividend of $300,000.    Of this amount the sum of $52,200 was paid to the petitioner, Benjamin Siegel, and the sum of $138,000 to the petitioner, Sophie Siegel, both of whom were stockholders in the Company.

Prior to 1913 and since, the Company has maintained on its books a reserve for bad debts, which was computed on various percentages of charge sales.    Subsequent to the enactment of the Revenue Act of 1921, the Company failed to exercise the option granted it by

section 234 (a) (5), and continued in its income tax returns to deduct debts ascertained to be worthless and charged off its books.

The following are the amounts of cash sales, charge sales, bad debts charged to the reserve and allowed as deductions, and additions to the reserve, at the end of the following fiscal years ended January 31:

| Year | Cash sales | Charge sales | Bad debts charged off | Credit to the reserve |
|---|---|---|---|---|
| 1914 | $903, 226. 98 | $1, 033, 487. 21 | $972. 95 | $11, 685. 63 |
| 1915 | 866, 863. 83 | 1, 018, 489. 45 | 936. 61 | 13, 361. 20 |
| 1916 | 924, 179. 15 | 1, 201, 179. 28 | 917. 21 | 16, 224. 40 |
| 1917 | 1, 146, 750. 35 | 1, 400, 998. 83 | 7, 449. 13 | 6, 521. 43 |
| 1918 | 1, 162, 661. 39 | 1, 299, 858. 53 | 14, 694. 87 | 11, 535. 37 |
| 1919 | 1, 425, 983. 58 | 1, 603, 592. 50 | 45, 527. 65 | 22, 858. 70 |
| 1920 | 1, 781, 059. 10 | 2, 180, 562. 48 | 24, 334. 03 | 67, 079. 22 |
| 1921 | 1, 613, 185. 30 | 2, 202, 320. 70 | 21, 739. 89 | 29, 443. 51 |
| 1922 | 1, 303, 581. 67 | 1, 774, 343. 67 | 17, 012. 87 | 12, 065. 47 |
| 1923 | 1, 208, 105. 59 | 1, 797, 039. 98 | 6, 214. 42 | 12, 344. 14 |
| 1924 | 1, 219, 226. 41 | 1, 912, 579. 31 | 8, 112. 72 | 13, 394. 95 |
| 1925 | 1, 043, 038. 10 | 1, 835, 165. 45 | 9, 715. 58 | None. |
| 1926 | 1, 167, 605. 45 | 2, 116, 540. 87 | 20, 056. 37 | None. |

The following are the percentages of bad debts charged off to total sales, to charge sales, and to the percentage of annual additions to the reserve:

| Year | Percentage of bad debts charged off | | Percentage of annual provision | | Year | Percentage of bad debts charged off | | Percentage of annual provision | |
|---|---|---|---|---|---|---|---|---|---|
| | To total sales | To charge sales | To total sales | To charge sales | | To total sales | To charge sales | To total sales | To charge sales |
| 1914 | 0. 0005023 | 0. 0009414 | 0. 0060337 | 0. 0113069 | 1921 | 0. 0056977 | 0. 0098713 | 0. 0077168 | 0. 0133693 |
| 1915 | . 0004967 | . 0009196 | . 0070868 | . 0131186 | 1922 | . 0055274 | . 0095882 | . 0039200 | . 0067999 |
| 1916 | . 0004315 | . 0007635 | . 0076337 | . 0135070 | 1923 | . 0020679 | . 0034581 | . 0041076 | . 0068691 |
| 1917 | . 0029238 | . 0053170 | . 0025596 | . 0046548 | 1924 | . 0025904 | . 0042417 | . 0042770 | . 0070035 |
| 1918 | . 0059674 | . 0113049 | . 0046843 | . 0088743 | 1925 | . 0033755 | . 0052941 | | |
| 1919 | . 0150277 | . 0283910 | . 0075451 | . 0142546 | 1926 | . 0061071 | . 0094760 | | |
| 1920 | . 0061424 | . 0111595 | . 0169322 | . 0307623 | | | | | |

The following are accounts receivable balances at close of year, percentage of bad debts charged off, and percentage of additions to reserve to accounts receivable:

| Year | Accounts receivable balances at close of year | Percentage of bad debts charged off to balance of accounts receivable | Percentage of additions to reserve to balance of accounts receivable | Year | Accounts receivable balances at close of year | Percentage of bad debts charged off to balance of accounts receivable | Percentage of additions to reserve to balance of accounts receivable |
|---|---|---|---|---|---|---|---|
| 1914 | $206, 949. 70 | 0. 0047013 | 0. 0564660 | 1921 | $460, 724. 36 | 0. 0471863 | 0. 0639069 |
| 1915 | 219, 901. 31 | . 0042592 | . 0607599 | 1922 | 451, 286. 67 | . 0376985 | . 0267357 |
| 1916 | 274, 636. 89 | . 0033397 | . 0590758 | 1923 | 476, 937. 39 | . 0130298 | . 0258820 |
| 1917 | 320, 472. 35 | . 0232439 | . 0203494 | 1924 | 475, 737. 03 | . 0170529 | . 0281562 |
| 1918 | 308, 801. 51 | . 0475867 | . 0373552 | 1925 | 468, 941. 65 | . 0207181 | |
| 1919 | 337, 662. 77 | . 1348317 | . 0676968 | 1926 | 489, 971. 45 | . 0409337 | |
| 1920 | 428, 422. 03 | . 0567992 | . 1565727 | | | | |

The earnings of the Company available for dividend distribution on January 31, 1923, after including therein the excess of additions to reserve for bad debts over the charges thereto for the period March 1, 1913, to January 31, 1923, were as follows:

| Year | Earnings available for dividends each year after above adjustments | Dividends paid | Balance | Accumulated balance |
|---|---|---|---|---|
| 1914 | $110,786.07 | $50,000.00 | $60,786.07 | |
| 1915 | 45,139.11 | 50,000.00 | ¹ 4,860.89 | $55,925.18 |
| 1916 | 83,263.64 | 100,000.00 | ¹ 16,736.36 | 39,188.82 |
| 1917 | 277,865.88 | 150,000.00 | 127,865.88 | 167,054.70 |
| 1918 | 117,997.26 | 150,000.00 | ¹ 32,002.74 | 135,051.96 |
| 1919 | 134,568.98 | 150,000.00 | ¹ 15,431.02 | 119,620.94 |
| 1920 | 232,416.35 | | 232,416.35 | 352,037.29 |
| 1921 | 72,248.36 | | 72,248.36 | 424,285.65 |
| 1922 | ¹ 149,107.56 | | ¹ 149,107.56 | 275,178.09 |
| 1923 | ¹ 96,243.48 | 300,000.00 | ¹ 396,243.48 | ¹ 121,065.39 |

¹ Red figures.

The accumulated balance on January 31, 1923, of earnings available for dividends after the deduction of all worthless debts and the restoration to surplus of the excess of the additions to the reserve made after February 28, 1913, over the worthless debts charged to reserve, and after the deduction of prior dividends and after certain adjustments, was $178,934.61.

This sum represents the earnings available for dividends on January 31, 1923, as computed by the respondent. If the additions to the reserve be a proper deduction, then the amount of available earnings on that date is $115,789.87. The Company followed a liberal credit policy. There were carried in accounts receivable accounts which were not charged off until they were about six years old, or the debtor was dead or had absconded. This account also contained accounts against persons who had become bankrupt. The following are condensed balance sheets of the Company as shown by its books as of March 1, 1913, and January 31, 1923:

| | Mar. 1, 1913 | | Jan. 31, 1923 | |
|---|---|---|---|---|
| **ASSETS** | | | | |
| CAPITAL ASSETS | $216,279.25 | | $283,868.62 | |
| Less reserve for depreciation | 101,384.49 | | 277,218.62 | |
| | | $114,894.76 | | $6,650.00 |
| MERCHANDISE | 371,943.41 | | 566,832.05 | |
| Less reserve for depreciation | 42,559.58 | | 152,730.38 | |
| | | 329,383.83 | | 414,101.67 |
| ACCOUNTS AND NOTES RECEIVABLE | 198,954.14 | | 532,480.37 | |
| Less reserve for bad debts | 23,275.95 | | 86,595.39 | |
| | | 175,678.19 | | 445,884.98 |
| OWING FROM STOCKHOLDERS | | 29,232.31 | | 28,620.59 |
| CASH IN BANK AND ON HAND | | 49,813.70 | | ¹ 14,636.96 |
| PREPAID EXPENSES | | 5,985.40 | | 16,952.26 |
| Total | | 704,988.19 | | 897,572.54 |
| **LIABILITIES** | | | | |
| NOTES PAYABLE | | 5,000.00 | | 240,000.00 |
| ACCOUNTS PAYABLE AND ACCRUED ITEMS | | 216,054.65 | | 213,098.81 |
| RESERVE FOR ADDITIONAL FEDERAL TAXES—PRIOR YEARS | | | | 52,880.24 |
| CAPITAL STOCK | | 50,000.00 | | 50,000.00 |
| SURPLUS | | 433,933.54 | | 341,593.49 |
| Total | | 704,988.19 | | 897,572.54 |

¹ Red figures.

The following is a summary of bad debts of the Company which had been charged off and subsequently recovered as applied to the year of sale:

| Year of sale—year ended Jan. 31— | Recovered during year ended Jan. 31— | | | | |
|---|---|---|---|---|---|
| | 1923 | 1924 | 1925 | 1926 | Total |
| 1913 | | | | $100.00 | $100.00 |
| 1914 | | | | 69.07 | 69.07 |
| 1915 | | $15.00 | $6.98 | 325.19 | 347.17 |
| 1916 | | 50.00 | 10.00 | 221.00 | 281.00 |
| 1917 | $7.00 | 388.44 | 121.70 | 331.45 | 848.59 |
| 1918 | 25.00 | 128.20 | 405.00 | 621.25 | 1,179.45 |
| 1919 | 202.32 | 1,152.61 | 1,201.42 | 868.52 | 3,424.87 |
| 1920 | 1,060.00 | 3,020.36 | 2,050.32 | 2,270.96 | 8,401.64 |
| 1921 | 227.50 | 477.75 | 266.70 | 304.10 | 1,276.05 |
| 1922 | | | 700.00 | 10.00 | 710.00 |
| 1923 | | | | 222.20 | 222.20 |
| 1924 | | | | | |
| 1925 | 35.00 | | | | 35.00 |
| 1926 | | | | | |
| Total | 1,556.82 | 5,232.36 | 4,762.12 | 5,343.74 | 16,895.04 |

The following past due accounts incurred in the years shown were included in accounts receivable on January 31, 1923:

| Year incurred | Amount | Percent |
|---|---|---|
| 1919 and prior | $6,160.44 | 4.8 |
| 1920 | 33,623.86 | 26.4 |
| 1921 | 42,740.84 | 33.5 |
| | 82,525.14 | 64.7 |
| 1922: First 6 months | 10,412.44 | 8.2 |
| | 92,937.58 | 72.9 |
| Last 6 months (including January 1923) | 34,593.88 | 27.1 |
| Total | 127,531.46 | 100.0 |

The amounts realized on these accounts in the succeeding years have also been ascertained as follows:

| Period | Amount | Percent |
|---|---|---|
| 11 months ending December 31, 1923 | $24,227.32 | 19.0 |
| Year 1924 | 21,578.05 | 16.9 |
| Year 1925 | 14,031.08 | 11.0 |
| Year 1926 | 4,106.80 | 3.2 |
| Year 1927 | 3,036.84 | 2.4 |
| Year 1928 | 16,131.65 | 12.7 |
| Year 1929 | 1,725.03 | 1.4 |
| 6 months ending June 30, 1930 | 359.00 | .2 |
| | 85,195.77 | 66.8 |
| Uncollected balance at June 30, 1930 | 42,335.69 | 33.2 |
| Total (as shown in prior table) | 127,531.46 | 100.0 |

The sole issue is what part of the dividend of $300,000, declared and paid by the Company on January 31, 1923, was composed of

"earnings and profits accumulated since February 28, 1913." Sec. 201 (a), (b) of the Revenue Act of 1921. The petitioners assert that, in addition to the amounts deducted on account of debts ascertained to be worthless and charged off, all of which the respondent has allowed, the earnings and profits should be further reduced by the sum of $63,952, the amount of the net additions made to its reserve for bad debts since February 28, 1913. The respondent has rejected this contention and has added this amount to the Company's surplus. In his deficiency notice the respondent gives as the reasons for this action, first, that the Company, in taking as deductions, under section 234 (a)(5) of the Revenue Act of 1921, individual debts ascertained to be worthless and charged off, indicated that the officers of the Company considered that such practice correctly reflected its earnings and, second, that the reserve was excessive. He now further contends that the Company, having followed the course of deducting individual bad debts in computing its net taxable income, should not be permitted to use the reserve method in arriving at its earnings and profits. To this the petitioners reply that net taxable income is one thing, and earnings and profits are quite a different thing, and that there is no valid reason why both should be computed in precisely the same way. It is true that the term earnings and profits may include items of nontaxable income, and that such earnings and profits may be reduced by items which do not constitute deductions as provided in the various revenue acts. Cf. *National Grocer Co.*, 1 B.T.A. 688; *L. S. Ayers & Co.*, 1 B.T.A. 1135; *Charles F. Ayer*, 12 B.T.A. 284; *Stanton* v. *Baltic Mining Co.*, 240 U.S. 103; *Untermyer* v. *Commissioner*, 59 Fed. (2d) 1004. The fallacy of this contention lies in the fact that while these terms differ in several particulars they have elements which are common to both. Among these is a deduction of or a provision for worthless debts. Section 234 (a)(5) of the Revenue Act of 1921 gave the Company the option of using for this deduction a reasonable addition to its reserve for bad debts. It did not see fit to avail itself of this option, but continued to deduct as before the passage of that act. In order to maintain its position the Company must now assert that in respect of items common to both net income and to earnings and profits it has the right to use one method of getting the benefit of its worthless debts in respect of income taxable to itself, and to use another method in computing that part of its income which is taxable to its stockholders. The Company having elected to use the charge-off method when it could have used the reserve method, either of which could have been used to compute both net income and earnings and profits, should, in our opinion, be held to its election in both cases. It should be compelled to turn square corners in its dealings with the Government. *Rock Island, A. & L. R. Co.* v. *United States*, 254 U.S. 141; cf. *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718.

We also think that the respondent should be sustained on the ground that the net additions to the reserve for bad debts does not truly represent the condition of the Company with respect to such items.

The reserve sought to be deducted is composed of additions made since February 28, 1913, without any reduction except on account of worthless debts charged to it. It is reasonably clear that practically all charge accounts for the first years subsequent to that date have been absorbed either into surplus or charged off. That this assumption is reasonable is demonstrated by the fact that for the six years ended January 31, 1919, the total charge sales amounted to over $7,500,000, and that of this sum there remained on the Company's books on January 31, 1923, only $6,160.44, and yet we find no transfer from the reserve to surplus. The result of this method was that the total net additions made to the reserve for the period March 1, 1913, to January 31, 1923, both inclusive, are over ten times the amount of the debts actually charged off in the fiscal year ended January 31, 1923. This does not take into consideration the net amount of the whole reserve if we add thereto the credit balance on March 1, 1913, of $23,275.95. The method by which this reserve was built up is thus stated by one of the petitioners' witnesses:

The company, on its books and records, as far back as 1915, had adopted a plan of charging in its accounts a provision based on two per cent. of the charge sales of the period. That may, from time to time, have varied depending on the profits, probably, of the company. They may have continued that for six or eight months, and they might have dropped off a month or two; for example, in the course of the year, the charge for the year was based on the percentage for a particular period.

Even this irregular method was not always followed; thus, on January 31, 1923, the net additions to reserve since February 28, 1913, amounted to $63,952, against an accounts receivable balance of $476,937.39. In the fiscal year 1924, the net addition to reserve was $5,282.23. Although the amounts of charge sales in 1925 and 1926 were larger than those in 1913, and although the accounts receivable balances were at the end of 1925, $468,941.65, and at the end of 1926, $489,971.45, we find that no addition was made to the reserve in either of these years, with the result that net additions to reserve since January 31, 1923, were over $24,000 less than at the end of the fiscal year 1923. We are not convinced that a reserve computed in this peculiar way reflected the true condition of the Company with respect to its worthless debts, and it is probable that these are the reasons the Company did not use its reserve in computing its taxable income.

This leaves the question of what worthless debts or debts recoverable only in part, if any, were included in the Company's accounts

receivable as of January 31, 1923. On this issue the petitioners introduced as a witness a certified public accountant who, when he made the examination from which he largely testified, was in the employ of an accounting firm, but at the time of the hearing was the auditor of the Company. This witness, after testifying that the Company followed no system with respect to the deduction of its bad debts, stated that there were accounts on the books which were not charged off until they were about six years old (the period of limitations on open accounts in Michigan—sec. 12323, Comp. Laws of Michigan) or the person was dead or had absconded. He also further stated that the books contained accounts of persons who had become bankrupt. He introduced a statement relative to the accounts in arrears which we have inserted in our findings. He stated that the total of $127,531.46 "represents the accounts six months to four years and later in arrears January 31, 1923", and that this amount was included in the balance sheet for that year. It appears that of the total amount the sum of $34,593.88 represented accounts incurred in the last six months of the fiscal year ended January 31, 1923. We have the right to assume that this was the fact, since petitioners' counsel in his brief reaches the same conclusion.

From the statement of the witness as to the policy of the Company, we conclude that no accounts were carried on the books which were barred by limitation or where the debtors were dead or had absconded. With reference to the bankrupts, we can only say that the petitioners have furnished us no evidence as to who were bankrupt, nor the amount of such bankrupts' debts. Nor are we impressed with the statement that the accounts were not charged off until the debtor was dead or had absconded. In the first case the debtor may have been solvent, and in the second place there is nothing to indicate that prior to a debtor's absconding he was not able to pay. We do not think that lapse of time, nothing else being shown, will convert an otherwise good debt into a worthless one. *W. C. Mitchell Co.*, 27 B.T.A. 645. A debtor may be good, but slow. We are given no facts as to the financial condition of such debtors. It may be that the Company was liberal in the matter of charge-offs, but we can give no relief in the absence of testimony showing what accounts in addition to those already charged off were worthless. Neither are we impressed with the fact that on June 30, 1930, $42,335.69 of the total $127,531.46 remained uncollected. All these accounts may have been collectible on January 31, 1923. We do not know what may have occurred in later years which affected the collectibility of these particular accounts, nor do we think that what occurred subsequent to January 31, 1923, is material except to the extent that it is corroborative. *Eli J. Taylor*, 9 B.T.A. 442.

Taking into consideration the fact that beginning with the calendar year 1921 the Company had the right to deduct not only all worthless debts, but also those debts which were recoverable only in part, we believe that the respondent's method of computing the accumulated earnings and profits of the Company is a nearer approximation of the truth than that which petitioners ask us to adopt.

*Judgment will be entered for the respondent.*